## Case No. 561.

### ARNOLD et al. v. MAYNARD.

[2 Story, 349;[1] 5 Law Rep. 296.]

Circuit Court, D. Massachusetts, May Term, 1842.

INVOLUNTARY BANKRUPTCY—PREFERENCES—MORTGAGE TO CREDITOR.

1. Where a trader gives a mortgage to one of his creditors, in contemplation of bankruptcy, and for the purpose of giving such creditor a preference over the others, it is an act of bankruptcy within the meaning of the statute.

2. Where the bankrupt act speaks of a conveyance or transfer by a debtor "in contemplation of bankruptcy," it does not necessarily mean, in contemplation of his being declared a bankrupt under the statute, but in contemplation of his actually stopping his business, because of his insolvency and incapacity to carry it on.

[Cited in Dennett v. Mitchell, Case No. 3,789; Everett v. Stone, Id. 4,577; Morse v. Godfrey, Id. 9,856; Ashby v. Steere, Id. 576; Ex parte Quackenboss, Id. 11,489. Distinguished in Jones v. Sleeper, Id. 7,496.]

3. Where a retailer of merchandise mortgaged his whole stock in trade, of the nominal value of four or five thousand dollars, and comprising the whole mass of his visible property, to a creditor, to secure to him the sum of about seventeen hundred dollars, and against

---
[1] [Reported by William W. Story, Esq.]

---

a liability for about five hundred dollars, the debtor owing debts to the amount of five thousand dollars, then over due, and the whole amount arising from a sale of his goods at auction being less than five thousand dollars: it was *held*, that the debtor must be taken in law, to have known, that he was, at the time of making the mortgage, insolvent, and must stop and break up his business, and that the mortgage having been executed in order to give the mortgagee a preference or priority over the rest of his creditors, it was "in contemplation of bankruptcy" within the meaning of the statute.

[Distinguished in Doan v. Compton, Case No. 3,940.]

4. Such a mortgage may subject the debtor to be proceeded against as an involuntary bankrupt, notwithstanding he did not, at the time of making it, intend to apply for the benefit of the bankrupt law, or to make himself liable to be proceeded against in invitum.

5. Nor does it make any difference as to the character of the act, whether the mortgage was voluntary and spontaneous on the part of the mortgagor, or was given upon the request or demand of the mortgagee, or upon a verbal promise made in general terms when the debt was contracted, to give security upon request, if at the time of giving [such security] the mortgagor knew that he was insolvent, and must stop his business, and intended thereby to give a preference or priority to the mortgagee over the rest of his creditors.

[Cited in Van Kleeck v. Thurber, Case No. 16,861; In re Connor, Id. 3,118; In re Jackson Iron Manuf'g Co., Id. 7,153. Distinguished in Ex parte Ames, Id. 823; Sawyer v. Turpin, Id. 12,410.]

In bankruptcy. This was the case of a petition by Charles Arnold, Henry Adams, and Joseph C. Hicks, of Boston, praying, that Charles Maynard, of Lowell, might be declared a bankrupt. The petition set forth that the said Maynard, on the 5th of April, 1842, made a fraudulent mortgage to John L. Perry, his former partner, conveying all his stock in trade, the same being all his visible property, to secure a debt amounting to $2,200.00. That the said Maynard, on the 10th of May, following, made a certain other fraudulent mortgage to one Burton, of all his stock in trade, to secure a debt amounting to $850.00; that he then falsely confessed, as due to the said Burton, the sum of $500; and the said Burton afterwards took possession of the said property under the said mortgage, wherefore the petitioners prayed, that the said Maynard might be declared a bankrupt, within the provisions of the act of congress, in such case made and provided. When this petition came before the district court, the following questions were ordered to be adjourned into this court for a final determination, namely:

First. Whether, if a retailer of merchandise, on the 25th day of April last, mortgaged his whole stock in trade, consisting of goods to the nominal amount of from four to five thousand dollars, and comprising his whole property, excepting debts due to him to the amount of about two hundred dollars, to a creditor, to secure him the sum of about seventeen hundred dollars, and against a liability of about five hundred dollars, he,

the debtor, owing debts to the amount of five thousand dollars, all then over due, and the cash value of all his goods, if sold at auction, not exceeding twenty-three hundred to four thousand dollars, it is an act of bankruptcy within the meaning of the statute?

Second. Whether, if a retailer of merchandise, knowing himself to be insolvent, makes such mortgage, without intending to apply for the benefit of the bankrupt law, or to make himself liable to be proceeded against in invitum, it is a security, conveyance, or transfer of property, made or given in contemplation of bankruptcy, within the meaning of the act?

Third. Whether, if such mortgage be made upon request, or demand of the creditor, and upon a verbal promise made in general terms, when the debt was contracted, to give security upon request; and without any spontaneous act on the part of the debtor, to induce such request, it is a security, conveyance, or transfer, for the purpose of giving the creditor any preference or priority over his general creditors, within the meaning of the statute?

Fourth. Whether, if such mortgage be made in contemplation of bankruptcy, and for the purpose of giving such preference, it is an act of bankruptcy within the meaning of the statute?

The cause was argued upon the adjourned question by Butler, of Lowell, for the petitioners, and by Parker, of Lowell, for the respondent, Maynard.

Before STORY, Circuit Justice, and SPRAGUE, District Judge.

STORY, Circuit Justice. This is the case of a petition by certain creditors of Charles Maynard, proceeding in invitum, to have him declared a bankrupt under the bankrupt act of 1841, c. 9, [5 Stat. 440.] There are four questions adjourned into this court for consideration and decision. The questions arise under that clause of the first section of the bankrupt act, which declares, that if any person, being indebted to a certain amount, and being a merchant or a retailer of merchandise, &c., &c., shall "make any fraudulent conveyance, assignment, sale, gift, or other transfer of his lands, tenements, goods, or chattels, credits, or evidences of debt," he may, upon petition of his creditors, be declared a bankrupt. All the questions turn upon this, whether the mortgage and conveyance stated in these questions, is to be deemed, under the circumstances therein stated, to be a fraudulent mortgage or conveyance, in the sense of the clause. Fraud, in any conveyance, is, and rarely can be, a mere matter of law; but, for the most part, it is a matter of fact, dependent upon the intent of the parties. But when all the facts and circumstances are ascertained, it may, and, indeed, often does, resolve itself into a mere question of law, as to the intent fairly deducible from those facts and circumstances. There is not the slightest doubt in my mind, that if the mortgage, in the present case, was made in contemplation of bankruptcy, and for the purpose of giving a preference to the mortgagee over the other creditors of the mortgagor, it would be an act of bankruptcy within the clause of the bankrupt act already referred to. Indeed, such a case falls directly within the second section of the act, which, among other things, declares, That all "securities, conveyances, or transfers of property, &c., made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, &c., &c., any preference or priority over the general creditors of such bankrupt, &c., shall be deemed utterly void, and a fraud upon this act." So that the fourth question must be answered in the affirmative, upon the very language of the act, as the mortgage under the circumstances stated in the question, was a "fraud upon the act."

The first question contains, what I suppose are the real merits of this case. And for the purpose of answering it, I must assume, that the retailer was conscious of his own insolvency, and of his utter inability to pay all his creditors, or to carry on his business any longer, and designed to give the mortgagee a preference and priority over all his other creditors by the mortgage. Now, under such circumstances, I must presume, that in point of law, he knew the natural consequences of such an act, and that he must thereby contemplate his own immediate bankruptcy, that is, his utter inability to pay his debts, and to proceed in business, and his own right to petition for the benefit of the bankrupt act of 1841, and his liability to be proceeded against at his own choice, as well as his liability to be proceeded against by his creditors in invitum, in bankruptcy, at their election, for such act, if it was intended to give a preference to the mortgagee over all his other creditors, as being against the provisions and policy of the act. In this view of the matter, and upon the facts stated, I should answer the first question in the affirmative, and say, that the mortgage so given, was an act of bankruptcy, within the meaning of the statute.

The second question involves more difficulty in being answered in direct terms, because it states, what I apprehend cannot, in point of law, be stated, that is, that a man does not intend and contemplate precisely what the law pronounces the necessary result of his acts. No man can be permitted to aver his ignorance of the law as a qualification of his acts. On the contrary, every man is presumed to know the law, and he is bound to know, what are the legal results of his acts; or, as Lord Ellenborough said in Newton v. Chantler, 7 East, 143, every man must be taken to contemplate the ordinary consequences of his own act at the time of the act done. "Ignorantia legis neminem ex-

cusat," is a maxim laid up among the earliest rudiments of the law. If the question meant to be asked, was, whether, if the mortgagor, at the time of executing the mortgage, knowing his own insolvency, and inability further to carry on his business, but having no immediate intention on his own part, to seek by petition the benefit of the bankrupt act, or thereby to enable his other creditors to proceed against him in invitum, to have him declared a bankrupt under that act, but actually designing and intending thereby to give a preference to the mortgagee over all his other creditors, it was such a security, conveyance, or transfer as was fraudulent, and in contemplation of bankruptcy within the meaning of the bankrupt act, then I say, that his mere private intention cannot overcome the legal intention and purport of the act; and it is to be treated, in the sense of the statute, as made in contemplation of bankruptcy, although it was not done by him with the intention to be declared a bankrupt. When the statute speaks of a conveyance or transfer in contemplation of bankruptcy, it does not necessarily mean, in contemplation of being declared a bankrupt under the statute; but in contemplation of actually stopping his business, because he is insolvent and utterly incapable of carrying it on. And this certainly was the primary sense, in which the language was used and understood in the English bankrupt laws, from which it has been borrowed and incorporated into our statute, whatever may have been the more modern construction put upon it. The very word bankrupt, supposes a man to be broken up in his business, and insolvent, or as Mr. Justice Blackstone, (2 Bl. Comm. 472, note,) puts it, the word is derived from bancus, or banque, which signifies the table or counter of a tradesman, and ruptus, broken, denoting thereby one, whose shop or place of trade is broken or gone. Now, when a man, being about to fail, and to stop all his business, with a perfect consciousness, that he is insolvent, and with the intention to break up all his business, makes a conveyance to a particular creditor, with a view to give him a preference over all his other creditors, of the whole, or of the mass of his visible property, we must understand, that he does the act with a design to evade the provisions of the bankrupt act, which provide for an equal distribution of his property among all his creditors. If such a conveyance should be held valid, what is there to prevent the party at a future time, at his leisure, or his pleasure, from applying for the benefit of the act? If the present mortgage should be held valid, what is there to prevent Maynard from now applying for the benefit of the bankrupt act, since he might say, that at the time, when he gave the mortgage, he had no fixed intention of that sort, and did not make it in contemplation of then taking the benefit of the act?

I agree, that the mere fact of a man's being insolvent, and knowing the fact, does not necessarily establish, that he means to stop business and break up his establishment; for he may hope and believe, that he can still carry it on, and perhaps redeem himself from insolvency. But, when he is deeply in debt, and intending to fail, and break up his whole business at once, he makes a conveyance to a particular creditor, to give him a preference over all the rest, it seems to me irresistible evidence, that he does the act in contemplation of bankruptcy. I do not think, that it is necessary, for this purpose, that he should contemplate the conveyance, as an act of bankruptcy, or that he should make it with a present and immediate intention to take the benefit of that statute. It is sufficient, that he must know, that in making that conveyance, he defeats the provisions of the statute. and yet that if it be not a fraud upon the act, he may still at any time, at his pleasure, take the benefit of the act, and thereby make the preference conclusive and perfect. Now, such a result is manifestly at war with the whole objects of the statute. It would put it in the power of the debtor to avail himself of all the benefits of the act, and yet would enable him at the same time, upon his own secret and unknown intention—inscrutable to others, and admitting of no possible certainty—to do the very acts, which the statute was designed to prevent. I do not think, that the English decisions upon this subject can have any very direct application to govern the construction of our statute. Their bankrupt acts apply for the most part, to cases of involuntary bankrupts; whereas the main purposes of ours are for the benefit of voluntary bankrupts. But the cases of Flook v. Jones, 4 Bing. 20, and Poland v. Glyn, Id. 22, note, and Ridley v. Gyde, 9 Bing. 349, proceed upon principles quite analogous. I am aware, that the authority of some of these cases, so far as they apply to the English bankrupt laws, has been questioned: that they have been thought to go too far; and that they did not meet the approbation of the court in Morgan v. Brundrett, 5 Barn. & Adol. 289. But this last case, as well as the other cases, shows, that the words "in contemplation of bankruptcy," are not necessarily limited to acts done, which would, per se, be acts, for which the party might, or would be declared a bankrupt under the bankrupt laws; but which must and would produce on his part, a positive state of bankruptcy, in which he might become a proper subject of the bankrupt laws. Mr. Justice Parke, in this case, said: "The meaning of these words 'in contemplation of bankruptcy,' I take to be that the payment or delivery must be with intent to defeat the general distribution of effects which takes place under a commission of bankrupt." Mr. Justice Patteson said; "The recent cases have gone too great a length; they seem to have proceeded on

the principle, that if a party be insolvent at the time when he makes a payment or a delivery, and afterwards becomes bankrupt, he must be deemed to have contemplated bankruptcy at the time when he made the payment. But I think, that is not correct; for a man may be insolvent, and yet not contemplate bankruptcy." Lord Chief Justice Gibbs, in the case of Fidgeon v. Sharpe, 5 Taunt. 539–541, was still more expressive. "With respect," (said he) "to this doctrine of contemplation in cases of bankruptcy, we have nothing, either in the common or statute law, to show what it is. The cases, in which this doctrine was introduced, make it depend upon the quo animo: if a trader thought he should not ultimately have enough to pay all his creditors, it must be presumed, that if he gives full payment to one, he does it in contemplation of bankruptcy. But if a man, honestly believing he shall have enough ultimately to pay all, but having bought goods with intent to apply them to the particular purposes of his trade, and finding, that it is necessary, that he should discontinue his trade, and therefore cannot make the intended use of the goods, thinks it fair and right to return the goods to the person of whom he purchased them, I cannot say, that this is done with a view or contemplation of bankruptcy." The case of Pulling v. Tucker, 4 Barn. & Ald. 382. is very strong to the purpose of showing, that a voluntary conveyance to one creditor, with the design to give him a preference, to the prejudice of the rest of the creditors, is a fraud upon the bankrupt laws, and an act of bankruptcy. The same doctrine was held in Newton v. Chantler, 7 East, 137, 143, 144. In Wedge v. Newlyn, 4 Barn. & Adol. 831, it was expressly held, that a trader conveying away property to a creditor, to such an extent as will prevent him from continuing his business, and render him insolvent, commits thereby an act of bankruptcy. See, also, Newton v. Chantler, 7 East, 145, per Le Blanc, J.; Compton v. Bedford, 1 W. Bl. 362; Carr v. Burdiss, 1 Cromp., M. & R. 447, Tyrw. 136, per Parke, Baron; Baxter v. Pritchard, 1 Adol. & E. 456; Abbott v. Burbage, 2 Bing. N. C. 444. Indeed, I should deduce the general conclusion from the English cases to be, that a conveyance by a person, knowing himself to be insolvent, to one creditor, with a design of giving him a preference over the other creditors, in the event of his own expected bankruptcy and stoppage of business, was of itself an act of bankruptcy, as a fraud upon the bankrupt laws. But whether it be so or not, under those laws, I think it is the natural, if not the necessary, intention, deducible from the whole structure and policy of the bankrupt act of 1841. With this explanation, I should answer the second question also in the affirmative.

As to the third question, whatever may be the case under the peculiar provisions of the bankrupt laws of England, it appears to me that it ought to be answered in the affirmative, under our bankrupt act of 1841, [5 Stat. 440.] The previous request or demand of the creditor, or the verbal promise of the debtor, when he contracted the debt, to give security upon request, does not make, and ought not to make, any difference as to the rights of the other creditors. Whether the mortgage is spontaneous on the part of the debtor, or requested by the creditor; still, if each knows that the debtor is insolvent, and that he contemplates immediate bankruptcy, and breaking up of his business, and the object of the mortgage is to secure a preference to that creditor over the other creditors, I think that it is a fraud upon the bankrupt act of 1841, and is, therefore, an act of bankruptcy within the meaning of the statute. I shall direct a certificate accordingly to be sent to the district court.

The certificate was as follows:

It is ordered by this court that the following certificate be sent to the district court, in answer to the questions adjourned by the said court into this court, in this case.

1. The first question is answered by this court in the affirmative, it being the opinion of this court, that upon the facts stated, the retailer, who made the mortgage to the creditor, the mortgagee, in the case, must be taken to have known, that he was, at the time of making the mortgage, insolvent, and must stop and break up his business; and that he executed that mortgage in order to give the mortgagee a preference or priority over the rest of his creditors, in contemplation of thus stopping and breaking up his business, and thus being in a state of bankruptcy.

2. The second question is also answered in the affirmative, it not being essential in the opinion of this court, that the retailer should contemplate or intend, at the time of making the mortgage, to apply for the benefit of the bankrupt act of 1841, or thereby to subject himself to be proceeded against by his creditors as an involuntary bankrupt, under the bankrupt act of 1841. But that it is sufficient to make the mortgage so given, a security, conveyance, and transfer, in contemplation of bankruptcy, within the meaning of the bankrupt act, that he should, at the time, know himself to be insolvent, and unable further to carry on his business, and that he contemplated a stoppage and breaking up of his business, and intended by such mortgage to give a preference or priority to the mortgagee over the rest of his creditors, in contemplation of such stoppage of business, and state of bankruptcy.

3. The third question is also answered by this court in the affirmative, this court being of opinion, that, under the bankrupt act of 1841, [5 Stat. 440,] it is wholly immaterial, whether the mortgage was voluntary and spontaneous on the part of the mort-

gagor, or was given upon the request or demand of the mortgagee, or upon a verbal promise made in general terms, when the debt was contracted, to give security upon request, if at the time of giving the mortgage, the mortgagor knew, that he was insolvent, and could not further continue his business, but must stop the same, and he intended by such mortgage to give a preference or priority to the mortgagee over the rest of his creditors, in contemplation of such stoppage of business and state of bankruptcy.

4. The fourth question is answered in the affirmative, as being clearly an act of bankruptcy within the meaning of the Bankrupt Act of 1841.

JOSEPH STORY,
One of the Justices of the Supreme Court of the United States.