# JANUARY TERM, 1875. 75

Hersey and others vs. The Board of Supervisors of Barron County.

HERSEY and others vs. THE BOARD OF SUPERVISORS OF BARRON COUNTY.

TAXATION. (1, 2) *Assessment for, made on arbitrary rules in disregard of requirements of statute, invalid.*

1. Under the statute (sec. 16, ch. 130, Laws of 1868), assessors, in listing lands for taxation, are required to make the valuation from actual view, and to exercise their judgment with reference to each tract, its advantages or disadvantages of location, the quality of the soil, the quantity and quality of the standing timber, and all the elements which enter into its value; and an arbitrary classification of lands, by rules which disregard these principles, will render the tax invalid.

2. The assessors and board of review of Barron county acted upon the following rules in valuing lands in that county: (1) Pine on first class driving streams assessed at $2 per M. within the limits of two miles' hauling; beyond those limits, at $1.50 per M. (2) Pine on second class driving streams, at $1.50 per M. within two miles, and $1.00 per M. beyond. (3) Pine on fourth class waters at 50 cents per M. (4) Lands entered for farm lands: wild, at from $2.50 to $10 per acre, according to locality; and cultivated, at $6 per acre. (5) Cut lands, according to inspector's reports, at 12½ cents per acre. *Held*, that although these rules may have been adopted without any fraudulent intent to favor any one person at the expense of another, yet a tax based upon such a valuation is invalid, and its collection will be restrained at the suit of a person injured thereby.

APPEAL from the Circuit Court for *Barron* County.

*Baker & Spooner*, with *I. C. Sloan*, of counsel, for the appellants, argued at length the question of practice which the court deemed it unnecessary to decide; and contended that the answer denied all the material allegations of the complaint, and displaced its equities, and therefore the injunction should have been dissolved. High on Injunctions, 518, § 883 ; *Smith v. Appleton*, 19 Wis., 468; *Moore v. Barclay*, 23 Ala., 739 ; *Rogers v. Bradford*, 29 id., 474 ; *Tainter v. Lucas*, 29 Wis., 375. The rules of assessment, even if strictly pursued, if honestly adopted as expressive of the assessors' judgment, there being no question of fraudulent intent, would not render the assessment

void. It was an error of judgment to follow the rules, if they were erroneous, and would not invalidate the assessment. *Dean v. Gleason*, 16 Wis., 15. The main point to be arrived at by the assessor in fixing the taxable value, was "the full value which could ordinarily be obtained therefor at private sale, and which the assessor shall believe the true owner, if he desires to sell, would accept in full payment." The require-ment of the statute that he should consider as to each piece, its advantage or disadvantage of location, quality of soil, timber, water privileges, etc., are merely for his guidance in determin-ing its value. If he arrives at a correct result, it would not in-validate the tax if he omitted to follow some of the mental guide boards named in the statute, especially as the chief value of the lands in question, and the test of their value was the amount of pine upon them.

*E. B. Bundy* and *F. J. McLain*, with *Wm. F. Vilas*, of coun-sel, for respondents, argued that there must be one uniform mode of assessment. *Knowlton v. Sup'rs*, 9 Wis., 410; *State v. Plankroad Co.*, 11 id., 40; *Fletcher v. Oliver* 25 Ark., 289; *Ex. Bank v. Hines*, 3 Ohio St., 15. Where it appears that the as-sessment is void, and injustice *may* ensue, equity will interfere by injunction. *Kneeland v. Milwaukee*, 15 Wis., 454; *Crane v. Janesville*, 20 id., 305; *Sigel v. Supervisors*, 26 id., 70; *Mitchell v. Milwaukee*, 18 id., 97. The answer admits the rule of assess-ment alleged in the complaint, but avers that no injustice has been done. This is mere matter in avoidance, not denial, and is stated on information and belief, and upon a subject only of opinion, the value of the land. The answer on motions of this kind is considered as an affidavit rather than a pleading, and is credible in proportion to the credibility of the affiant, and his means and extent of knowledge. *Fulton Bank v. Canal Co.*, 1 Paige, 311; Tiffany & Smith's Practice, 389.

COLE, J. This is an appeal from an order denying a motion to dissolve a temporary injunction restraining the county treas-

JANUARY TERM, 1875.          77

Hersey and others vs. The Board of Supervisors of Barron County.

urer from selling lands for delinquent taxes. The motion to dissolve stated that it would be founded on the original injunction order, complaint and answer on file. On the hearing of the motion, the plaintiffs were permitted to read, against the objection of the defendants, affidavits in support of the allegations of the complaint.

A question of practice was discussed upon the argument, which we were invited to decide, whether the course adopted in the court below was regular and authorized by the statute, sec. 9, ch. 129, R. S. This section provides, that where the application to dissolve the injunction is made upon affidavits on the part of the defendant, but not otherwise, the plaintiff may oppose the same by affidavits or other proofs, in addition to those on which the injunction was granted. Both the complaint and answer were verified; and it is claimed on the part of the plaintiffs, that an application to dissolve, based upon a verified answer, is within the intent of the provision, and that the plaintiff may introduce new affidavits in opposition.

This question of practice will not now be decided, for the reason that it sufficiently appears from the allegations of the complaint and the admissions in the answer, that the assessment of the real estate was made upon an illegal and inequitable basis, and that, therefore, the injunction was properly continued.

The complaint alleges, that certain rules were adopted by the assessors in 1872, for the assessment of real estate in Barron county, and that the same rules were followed by the assessor and board of review in making the assessment for the year 1873, upon which the tax in question was levied. These rules are as follows: First. Pine on first class driving streams assessed at $2 per M. within the limits of two miles hauling. Second. Pine on such streams of more than two miles hauling, at $1.50 per M. Third. Pine on second class driving streams, as Moose Ear and other streams mentioned, at $1.50 per M. within two miles, and $1.00 per M. beyond. Fourth.

Pine on fourth class waters, head of Yellow river, north of Bear Lake, at 50 cents per M. Fifth. Lands entered for farm lands (wild) at from $2.50 to $10 per acre, according to locality; and cultivated, at $6 per acre. Sixth. Cut lands according to inspectors' reports, at 12½ cents per acre.

It is alleged, that these rules were framed and adopted by the taxing officers with the intent and for the purpose of favoring the firm of Knapp, Stout & Co., owners of large quantities of pine lands in Barron county, and that they operated oppressively upon the rights of the plaintiff.

The defendants deny that the rules of assessment adopted in the year 1873 were proposed for the purpose of favoring the firm of Knapp, Stout & Co., or were intended to benefit in any manner that firm ; and they aver in the answer, " that the said rules were proposed and adopted for the government of the said assessment of 1873, for the reason, that under them it was practicable, and practicable only under them, to secure an assessment fair and equitable, based upon the actual value of the taxable property ; and that the said rules were so proposed and adopted in the year 1873 to the end that a fair and just assessment might be had in said town, and for no other or different reason or purpose."

It sufficiently appears from this averment, as well as from other admissions in the answer, that these rules were made the basis of the assessment for the year 1873 ; and assuming, as we may well do, that they were adopted with no fraudulent intent, and with no purpose of favoring any owner of real estate, the question then arises, Was the assessment valid which was made in conformity to them? It appears to us that it was not.

The statute directs the manner in which real estate shall be listed or valued for taxation. " Real property shall be valued by the assessor from actual view, at the full value which could ordinarily be obtained therefor at private sale, and which the assessor shall believe the owner, if he desires to sell, would accept in full payment. In determining the value, the assessors

shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity and quality of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and all buildings, fixed machinery and improvements of every description thereon, and their value." Sec. 16, ch. 130, Laws of 1868. The listing and valuation are the foundation of all the subsequent proceedings; and this provision prescribes the manner in which they shall be made, with the manifest purpose that the tax levied upon each tract shall be relatively according to its real value. The assessor is required to make the valuation from actual view, and he is called upon to exercise his judgment with reference to each tract, its advantage or disadvantage of location, the quality of the soil, the quantity and quality of standing timber; in short, he is to consider all the elements which enter into and constitute its value. These are the plain, obvious rules and principles upon which the statute contemplates that the valuation shall be made. By the rules in question, these statutory principles were utterly ignored and disregarded. An arbitrary classification was applied to the real estate. It is conceded that the lands were generally wild, pine lands. The standing pine on what is called first class driving streams was assessed at $2 per M. within the limits of two miles, regardless of the advantage or disadvantage of its location up or down the stream, and wholly ignoring the element of quality in the standing timber. In respect to pine on such streams, which had to be hauled more than two miles, the same arbitrary value was affixed, regardless of its quality or location from the source or mouth of the stream. The same remarks apply to the other classification in the rules. The real estate is valued solely with reference to the quantity of pine timber standing upon it, without taking into account the quality of the pine, its location up or down the stream, or the character of the soil, or those other elements which determine the value of land, and which the statute says the assessor shall con-

sider and regard in making the valuation. That a valuation thus made would necessarily operate unjustly and unequally, seems to us too plain for discussion. True, it is alleged in the answer that it was only practicable to make a fair and equitable valuation of the real estate under these rules, which is equivalent to saying that the law upon the subject cannot be complied with. But if no valuation can be made as the statute requires, we fail to see upon what ground the tax can be sustained. A valuation is essential to lay the foundation for the tax; and if no legal valuation was practicable, it follows that any tax based upon a wholly unauthorized valuation would be illegal and void. The allegation is a *felo de se.*

But it is said by the counsel for the defendants, that even if the rules above quoted were absolutely followed and strictly pursued by the assessor in making the valuation, yet, if they were honestly adopted as expressive of the judgment of the assessor, there being no question of fraudulent intent, a court of equity would not say the assessment was void. But how can a court of equity pronounce an assessment valid which is in plain violation of law? Real estate must be valued in the manner and upon the principles prescribed by the statute. The assessor may make a mistake in the valuation while honestly attempting to execute the law. Errors of judgment, inequalities in valuation, will intervene in all proceedings of this character. It might not be practicable for the assessor to go over every foot of ground and thus, from "actual view" of every part of a tract, determine its true market value, at the time of the assessment. But there should be an attempt to substantially comply with the law. Here we feel warranted in assuming, upon the admissions in the answer, that the law was disregarded, the assessor adopting for the guidance of his judgment rules which not only departed from the statutory requirements, but which could not fail in their operation to defeat a fair and just valuation. That such must have been the necessary effect of the rules upon the valuation, seems to us perfect-

ly obvious. As remarked by counsel for the plaintiffs, the idea that standing pine, just two miles from a stream, should be assessed at $2 per M., though of a poor quality, while excellent timber on an adjoining tract, a little further from the stream, is assessed at $1.50 per M., confounds all ·notions of justice and equality.

That the assessment made under the rules, and· the taxes levied upon the lands of the plaintiffs, were void, and that a court of equity will interfere to restrain the sale, follows from the decisions in. *Hamilton v. The City of Fond du Lac*, 25 Wis., 490, and *The Milwaukee Iron Co. v. The Town of Hubbard*, 29 id., 51. Those cases seem to be directly in point upon that position.

*By the Court.* — The order of the circuit court is affirmed.