MARSH and others vs. THE BOARD OF SUPERVISORS OF CLARK COUNTY and another.

TAXES: INJUNCTION. *Issue of deed of land for taxes restrained, where there is no legal assessment.*

1. That provision of our state constitution which declares that the rule of taxation shall be uniform, requires a uniform *assessment* of value; and no tax upon property can be supported which does not proceed upon valid assessment, legally made, upon a uniform rule.

2. Violations or evasions of duty imposed by law to secure a just and uniform rule of assessment, whether occurring by mistake in law or by fraud in fact, which go to impair the general equality and uniformity of the assessment, and thereby to defeat the uniform rule of taxation, vitiate the whole assessment as the foundation of a valid tax. *Kelley v. Corson,* 11 Wis., 1, and *Miltimore v. Supervisors,* 15 id., 9, as to this point, overruled.

3. Under ch. 130, Laws of 1868, the act of the assessor in making, and annexing to and filing with the assessment roll, an affidavit that he has performed his statutory duty in the several particulars there enumerated, including the valuation of each parcel of real property from *actual view* of it, is essential to the validity of the assessment; and when such affidavit has not been made, the facts which should appear by it can not be shown *aliunde;* nor can the rule of the statute be relaxed by showing that compliance with it was impossible.

4. Equity will restrain the issue of a deed upon a sale of land as for a delinquent tax, where there was no valid assessment, without requiring other proof of injury to the plaintiff from the pretended tax.

APPEAL from the Circuit Court for *Clark* County.

This action was brought by *John J. Marsh and another,* as administrators of the estate of Samuel Marsh, deceased, together with other complainants, against the board of supervisors and the clerk of Clark county, to have certain taxes, assessed in 1870 on plaintiffs' lands in said county, and the sales of said lands for such taxes, and the certificates of such sales, declared void, and to restrain the issue of tax deeds based upon said sales. A part of the lands in question were situated in township 25 north, ranges 1 and 2 west, which were

Marsh and others vs. The Supervisors of Clark County and another.

included in the town of Weston, and a part in township 25 north, range 1 east, which was in the town of Lynn, in said county. It is alleged in the complaint, among other things, that the assessor of the the town of Weston did not value the lands in the two townships first above named, " from actual view, nor at the full value which could ordinarily be obtained therefor at private sale, and which the assessor believed the owner, if he desired to sell, would accept in full payment therefor," and that only a small portion (if any) of the lands in said two townships were assessed from actual view. There is a similar averment as to the assessment made that year of lands in the town of Lynn. It is further averred that the lands in the three townships above described " are uniformly heavily timbered, but there is a great variety of surface and soil, some portions of said townships being broken and bluffy, and having very little or no value, other portions being wet and marshy, and others level and fertile, valuable for cultivation and general agricultural purposes; some of said lands having valuable tracts of pine timber on them, and the timber of other of said lands being of little or no value;" that, at the time when said assessments were made, a number of tracts of land in each of those townships had been to a considerable extent cleared, cultivated and improved with fences and buildings thereon, and were much more valuable than the unimproved lands in said townships; that plaintiffs were at that time nonresidents of said county, and all said lands were in a wild and unimproved state; that the respective assessors of said towns, in the year named, valued the lands therein, for the purpose of assessment, arbitrarily and at nearly uniform rates, without reference to their relative value, and, in very many cases, without actually viewing them; that the lands in said two townships in the town of Weston were valued at from two to three dollars per acre, but mostly at two dollars per acre, three or four sections being valued at four dollars, one forty at six, and one at eight dollars and fifty cents, per

Marsh and others vs. The Supervisors of Clark County and another.

acre; that all the lands in said two townships are divided by the government survey into forty-acre tracts, but were assessed and valued in tracts of one hundred and sixty acres each; that the improved lands were generally assessed at the same rate as the unimproved lands, and in some instances at lower rates, although generally of much greater value; that the lands in township 25, range 1 east, in the town of Lynn, were valued at two dollars and fifty cents per acre without exception; that the respective assessors of said towns intentionally and fraudulently made a distinction in such assessment against the plaintiffs and other nonresidents owning lands in said townships, for the purpose of making them pay more than their just portion of the taxes; and that the valuation so made was the basis on which the taxes of that year were levied upon plaintiffs' lands. It is further alleged that no notice of the time and place of meeting of the board of review of either of said towns was posted, and no meeting of such board was held, in said year, and the pretended assessment rolls aforesaid were not reviewed; that neither of the assessors of said towns took and subscribed the oath annexed to said pretended assessment rolls, as required by law, or took and subscribed any oath of like effect or substance; and that no oath taken and subscribed by either of said assessors was annexed to either of said rolls; and it is further alleged that neither of the treasurers of said towns, respectively, made any proper return to the county treasurer, or made any affidavit to be annexed to the statement of the taxes remaining unpaid. The other averments of the complaint need not be stated. The answer was a general denial.

The court found, among other things, that the assessors of the towns of Weston and Lynn, respectively, did not intentionally or fraudulently make a distinction, in the assessment above mentioned, against the plaintiffs or other nonresidents for the purpose of making them pay more than their just and equal portion of the taxes to be paid in those towns

in 1870; but that each of said assessors, in that year, made a just, equitable and fair assessment of the lands situate in his town. There was no other specific finding as to any facts alleged in the averments of the complaint above stated; but a general finding of " all the issues of fact joined in the pleadings in this action, in favor of the defendants."

It will sufficiently appear from the opinion herein, what facts were shown by the evidence bearing upon the averments of the complaint above recited.

From a judgment in favor of the defendants, the plaintiffs appealed.

Briefs were filed, by *Sloan, Stevens & Morris* for the appellants, and by *J. R. Sturdevant* and *R. J. McBride*, with *S. U. Pinney* of counsel, for the respondents; and there was oral argument by *Mr. Stevens* and *Mr. Pinney*.

For the appellants it was argued, among other things, that, " in general, any series of acts required by statute before taxing owners of property, are conditions precedent to the collection of the tax " (Hilliard's Law of Taxation, 307, § 34, and cases there cited); that requisitions prescribed by statute, which " are intended for the protection of the citizen and to prevent a sacrifice of his property, and by a disregard of which his property might be, and generally would be, injuriously affected, are not directory, but *mandatory*," and that " they must be followed or the acts done will be invalid " (Cooley on Taxation, 215, and cases there cited; *Hamilton v. Fond du Lac*, 25 Wis., 490; 18 id., 411); that apportionment of the sum to be raised by a valid assessment is indispensable to a valid tax, and the absence of it cannot be remedied by curative legislation (Cooley, 227 (3), 228, 229 (2), 230, 258, 259 (2), 260-288, 534; *Commercial Bank v. Woodside*, 14 Pa. St., 404-409); that the statutory provision requiring the assessor to value the land from actual view is for the protection of the citizen, and the assessors must make such valuations *for themselves* (Cooley, 308 (5), 309 (5), 338, § 98, and cases

there cited), and it is not sufficient to copy the assessment roll of a former year (Cooley, 260 (1); *Nason v. Whitney*, 1 Pick., 140; *People v. Hastings*, 29 Cal., 449; *Greenough v. Fulton Coal Co.*, 74 Pa. St., 486); and that the provision requiring assessors to take the statutory oath annexed to the assessment roll was also essential (Cooley, 312, § 40, 307 (a), 308, § 37, 314, 315, 289, and cases there cited; *Van Rensselaer v. Witbeck*, 7 N. Y., 517). 2. That it appeared from the evidence that the statutory rules of valuation were not followed, but that other rules were followed; that no valuation whatever was made of buildings or fixtures; that improvements, so called, were valued at a uniform price per acre, viz., five dollars per acre in Weston, and one dollar in Lynn; that with this exception all the lands of Lynn were valued at $2.50 per acre, and, with the same exception and a small variation in the value of pine lands, all the lands in Weston were valued at $2 per acre, without regard to "advantage or disadvantage of location, quality of soil, quantity and quality of standing timber, water privileges, mines, minerals, quarries or other valuable deposits known to be available thereon " (Tay. Stats., 397, § 19, and 400, § 31); and that, however lawful the intent of the assessor may have been in such a case, the court will presume that plaintiffs were injuriously affected thereby, and will declare the assessment void. *Hersey v. Barron County*, 37 Wis., 75, and cases above cited. 3. That it further appeared from the evidence that a higher valuation, in proportion to actual value, was intentionally placed upon the lands of nonresidents, including the plaintiffs, than on those of residents — the former being assessed at three-fourths, and the latter at one-fourth, of the values which the assessors themselves put upon them; and that this departure from the statutory rule of valuation was injurious to the plaintiffs. Cooley, 228, 534; Hilliard, 351, § 129; *Kneeland v. Milwaukee*, 15 Wis., 455; 18 id., 411; 23 id., 590; 30 id., 522. 4. That testimony was improperly admitted at the trial to show the relative values of

lands in the towns of Weston and Lynn, upon the assumption that it was competent for the court to determine that an illegal tax was just and equitable. The valuation can be made only by the person to whom the power is given; it cannot be made by the legislature, nor by the courts. *People v. Hastings,* 29 Cal., 449; *State Railroad Tax Cases,* 92 U. S., 575; *Heine v. Levee Comm'rs,* 19 Wall., 655; Cooley, 157, 517. 5. That the proof shows neither legal meeting nor notice of meeting of the board of review in either of the towns in question, in 1870; and in particular that there was no affidavit or record evidence of the posting of notice. 6. That where the statute requires an affidavit that some act has been done, which is essential to render a tax valid, such affidavit is the exclusive evidence of the fact. *Jarvis v. Silliman,* 21 Wis., 599; *Iverslie v. Spaulding,* 32 id., 394; Cooley, 227–230, 335, 377.

For the respondent it was argued, among other things, 1. That before tax proceedings will be stayed, it must be shown, not only that they are irregular or even void, but also that they are inequitable and unjust, and that it will be against conscience to allow them to go on (*Warden v. Supervisors,* 14 Wis., 618; *Kellogg v. Oshkosh,* id., 623; *Dean v. Gleason,* 16 id., 1; *Miltimore v. Supervisors,* 15 id., 9; *Mills v. Gleason,* 11 id., 497; *State Railroad Cases,* 92 U. S., 612–617; Cooley on Tax., 540, 541, and note); that even where the established *principle* of taxation has been violated, the court will not interfere, unless it is shown that actual injustice would ensue (*Warden v. Supervisors, supra*), but will leave the party to his legal remedies (*Kneeland v. Milwaukee,* 15 Wis., 465); that all the objections taken to the assessment in the present case come within this rule, there being no proof that the plaintiffs were required to pay any greater amount of taxes than they would have been obliged to pay if the statutory rules had been strictly observed, and the court having found that the assessment was equitable and just; that the

doctrine of *Jarvis v. Silliman*, 21 Wis., 599, and *Iverslie v. Spaulding*, 32 id., 394, is wholly inapplicable to the present case, those having been suits at law, involving the mere legal title; and that, while, in the case of *Hersey v. The Supervisors*, 37 Wis., 75, there were some expressions which might seem to imply that mere illegality in the proceedings was a sufficient ground for equitable interference, yet the case as a whole did not support that view, it being expressly stated, as the ground of the decision, that the arbitrary rules of assessment adopted in that case " would necessarily operate unjustly and unequally." Counsel further contended 'that even where the assessment is unequal, if those upon whom it imposes excessive burdens, acquiesce and pay their taxes, others, who are not injured, or who are favored by the inequality, cannot come into a court of equity and get rid of paying their taxes altogether by reason of such inequality; that it is not enough, therefore, for the plaintiff in such a case to show that the assessment was made in pursuance of arbitrary rules, which must work injustice to *some persons*, but he must show that these rules operated to *his own* prejudice; that in the present case there was no evidence that the assessors adopted any arbitrary rules of valuation, nor that the plaintiffs were injured by the valuations actually made, but on the contrary the evidence showed that the assessors proceeded in good faith, in the exercise of their best judgment, in valuing the various kinds of land, with no effort to make an unfavorable discrimination against the plaintiffs, and that, in order to induce these gentlemen to pay their taxes without contest, they even assessed their lands lower than some others in proportion to their actual value. Counsel also contended that the evidence offered by defendant, from abundance of caution, to show that the assessments were fair and just, was properly admitted; its admissibility in such a case being a logical result of the decisions in *Warden v. Supervisors* and *Dean v. Gleason, supra*. They also argued, from the evidence, that the boards of re-

view of the towns of Weston and Lynn held their meetings after due notice in 1870; and that the plaintiffs, having failed to take their objections before those boards, could not now be heard. *Howe v. Boston*, 7 Cush., 273; *Exchange Bank v. Hines*, 3 Ohio St., 35; *State Railroad Tax Cases*, 92 U. S., 575, 614, 615; Cooley, 528, and cases cited in note 4.

RYAN, C. J. I. Doubtless taxes are a debt due to the state by its citizens for protection in life, liberty and property. *Warden v. Supervisors*, 14 Wis., 618. But the debt is liquidated and matures only upon a valid exercise of the taxing power. Here, the exercise of the taxing power must be upon a uniform rule; and it is only upon an equal assessment, as the foundation of uniform apportionment, that the taxing power can be put in operation. The statutes of the states generally provide for assessment, as " an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation;" and, when they so provide, the assessment becomes an essential part of the process in the collection of taxes. Cooley on Tax., ch. XII. But, under our constitution, the assessment is not only an essential part of the process, but seems to be jurisdictional. For in no other way does it appear possible to collect taxes upon property by uniform rule. Indeed, the constitution so clearly implies uniform assessment of values as an essential prerequisite to taxes upon property, that it is not unsafe to hold that the constitution itself makes such assessment jurisdictional. It is certainly so by statute. And such a tax, to be valid under the constitution, must proceed upon a regular, fair and equal assessment of the property to be taxed, made by the officers, in the manner and with the securities and solemnities provided by statute. These last the legislature may make and alter at pleasure; but no statute can dispense with assessment, or with its essential fairness and equality. *Smith v. Cleveland*, 17 Wis., 556. For, with-

out these, taxes cannot go upon a uniform rule. The uniformity of the rule may be broken, as well by inequality of assessment of values to be taxed, as by inequality of rule in the tax itself. And no tax upon property can be supported which does not proceed upon valid assessment, legally made upon uniform rule.

Of course, assessments are as liable to error as other processes. Assessors may commit errors of judgment and mistakes of fact. So that these are exceptional and happen in good faith, not affecting the principle or the general equality of the assessment, they will not vitiate it. So this court has frequently held. *Weeks v. Milwaukee,* 10 Wis., 263; *Dean v. Gleason,* 16 id., 1; *Hersey v. Supervisors,* id., 185; *Smith v. Smith,* 19 id., 615. But, as will be seen by cases cited *infra,* the court has also frequently held that violations or evasions of duty imposed by law to secure a just and uniform rule of assessment, whether occurring by mistake in law or by fraud in fact, which go to impair the general equality and uniformity of the assessment, and thereby to defeat the uniform rule of taxation, vitiate the whole assessment as the foundation of a valid tax.

It is with a view to the general justice of assessments, that various statutes have defined the duties of all officers having part in making or correcting them. And it is time that these officers should be reminded of the language of this court, in the first case upon the subject, that they must not disobey positive mandates of the law and so make assessments in their own wrong. *State v. Assessors,* 1 Wis., 345.

These views seem to be almost selfevident. The principle on which they rest has been recognized in this court, in particular cases, by *mandamus* to correct errors in assessment rolls: *State v. Assessors, supra; State v. Supervisors,* 3 Wis., 816; *State v. Portage,* 12 id., 562; *S. C.,* 14 id., 550; by *certiorari* to review the action of boards of review: *Milwaukee I. Co. v. Schubel,* 29 Wis., 444; *Spensley v. Valentine,* 34 id.,

154; and in actions turning upon alleged abuses: *Head v. James*, 13 Wis., 641; *Janesville v. Markoe*, 18 id., 350; *State v. Williston*, 20 id., 228; *Crane v. Janesville*, id., 305; *Lefferts v. Supervisors*, 21 id., 688; *Curtis v. Supervisors*, 22 id., 167; *White v. Appleton*, id., 639; *Orton v. Noonan*, 23 id., 102; *Van Slyke v. State*, id., 655; *Delorme v. Ferk*, 24 id., 201; *Ketchum v. Mukwa*, id., 303; *Wauwatosa v. Gunyon*, 25 id., 271; *Hamilton v. Fond du Lac*, id., 490; *S. C.*, id., 496; *Phillips v. Stevens Point*, id., 594; *Orton v. Noonan*, id., 672; *Siegel v. Supervisors*, 26 id., 70; *Merton v. Dolphin*, 28 id., 456; *Hale v. Kenosha*, 29 id., 599; *Sprague v. Cœnen*, 30 id., 209; *Dolan v. Trelevan*, 31 id., 147; *Oberich v. Gilman*, id., 495; *Whittaker v. Janesville*, 33 id., 76; *State v. Gary*, id., 93; *Hersey v. Supervisors*, 37 id., 75; *Matteson v. Rosendale*, id., 254; *Massing v. Ames*, id., 645; *Cramer v. Stone*, 38 id., 259, and many other cases.

From such of these cases as correct or give relief against errors in detail, affecting only particular property in the assessment, it appears to follow logically that where a valid objection is common to all or much of the property, or goes to the rule or to the whole process of assessment, it must operate to avoid the whole tax levied on the assessment. And so this court has repeatedly held. *Knowlton v. Supervisors*, 9 Wis., 410; *Weeks v. Milwaukee*, 10 id., 242; *Mills v. Gleason*, 11 id., 470; *Slauson v. Racine*, 13 id., 398; *Warden v. Supervisors*, 14 id., 618; *Kneeland v. Milwaukee*, 15 id., 454; *Hersey v. Supervisors*, 16 id., 185; *Smith v. Smith*, 19 id., 615; *Lefferts v. Supervisors*, 21 id., 688; *Milwaukee I. Co. v. Hubbard*, 29 id., 51; *Hale v. Kenosha*, id., 599; *Dean v. Borchsenius*, 30 id., 236; *Oberich v. Gilman*, 31 id., 495; *Whittaker v. Janesville*, 33 id., 76; *Hersey v. Supervisors*, 37 id., 75, and other cases.

It would be tedious and unprofitable to review these cases in detail. The general principle underlying them all has been already sufficiently explained. They undertake to provide a

rule which will neither tolerate illegal and oppressive taxation nor defeat the collection of the public revenue for technical errors, by distinguishing between the latter and objections which go to the *groundwork* of the tax, affecting the established principle of taxation, and so rendering it essentially illegal. *Mills v. Gleason; Warden v. Supervisors, supra.* As already seen, the groundwork spoken of in these and other cases, necessarily includes a valid assessment, made in substantial compliance with law, and proceeding upon a just and equal rule of valuation. This appearing, there is foundation so far to support a tax. Failing this, there is nothing for a tax to rest upon; no groundwork or foundation.

There are, in some of the cases, *dicta* upon the distinction between formal and substantial defects in assessments, which may be not wholly consistent with the general principle; as in *Hersey v. Supervisors*, 16 Wis., 185; *Dean v. Gleason*, id., 1; *Bond v. Kenosha*, 17 id., 284; and elsewhere. But we are able to recall two cases only, where the judgment of the court at all conflicts with it. And these cases, with any others of the like purport, must be considered so far overruled.

In *Kelly v. Corson*, 11 Wis., 1, it appears to have been held that a mistake in law by the supervisors, acting as a board of equalization, which materially affected the uniform rule of assessment, would not avoid it, because it was "an error of judgment upon the part of the county board, as to their power under the statute, and they were endeavoring in good faith to discharge their duties according to law." But, *ignorantia legis neminem excusat;* far less an officer appointed under the law to execute *quod quisque tenetur scire;* a maxim laid up among the earliest rudiments of the law, as STORY, J., says in *Arnold v. Maynard*, 2 Story, 349. The rule in *Kelley v. Corson* is obviously an inadvertence, not unnaturally growing out of a previous decision of the same cause, *Kelley v. Corson*, 8 Wis., 182. For the mistake in law of the supervisors in that case was not made more obviously in good faith,

than the mistake in law of the common council held to be fatal to the whole assessment in *Weeks v. Milwaukee, supra*, ever since followed, and decided between the two reports of *Kelley v. Corson*.

In *Knowlton v. Supervisors, supra*, the court held the assessment and the tax levied upon it to be void, for violation of the rule of uniformity, in favor of one whose tax appeared to be greater in consequence of the violation. In *Miltimore v. Supervisors*, 15 Wis., 9, in a suit by one whose tax upon the same tax roll appeared to be less in consequence of the violation, the court refused to interfere, " because the taxing officers demanded of her less than her due proportion of the public revenue." But the court could not know what her due proportion would be. This we take to be a mistake of fact, rather than of law, such as might have excused the officers in *Kelley v. Corson*, but cannot excuse the rule laid down. For, granting the invalidity of the assessment upon the ground stated, it could not found a valid tax for either class of persons. There was, in the phrase of *Mills v. Gleason*, no groundwork for a tax, and therefore no tax. The void assessment could no more create a debt or obligation for Miltimore at the less rate, than for Knowlton at the greater rate. Failing assessment, the tax failed as a whole. And property of both classes still remained chargeable, not yet charged, with due and unliquidated apportionment of the public charges, for which the ineffectual attempt at taxation had been made. That proportion could be ascertained by new and valid assessment only. And in advance of that, it was as inequitable to enforce the less as the greater rate. The court seems to have held the unlucky Miltimore accountable for the void assessment, and inclined to rebuke her constructive effrontery in asking relief against it. But the principle, as now stated, is too certain in itself, and too clearly recognized in numerous cases, to suffer any doubt from these or other exceptional cases; far less from mere

*dicta* scattered through the reports.   A valid assessment only can support a valid tax.

Following closely upon the decisions of this court above cited, came various statutes providing for reassessment and re-taxation, both in cases of particular and of general failure of previous taxes.   Such statutes have been always upheld by this court.   *Tallman v. Janesville,* 17 Wis., 71; *Cross v. Milwaukee,* 19 id., 509; *Dill v. Roberts,* 30 id., 178; *Whittaker v. Janesville,* 33 id., 76.   And they go further and more directly to meet the dilemma suggested in *Mills v. Gleason* and *Warden v. Supervisors,* than any rule which this court has power to adopt.   Except when taxing officers are afflicted with chronic lawlessness, they serve to secure at once the collection of the public revenue and the just and equal taxation of property.

The assessments in the towns of Lynn and Weston in the respondent county, in question here, were made under ch. 130 of 1868.   That statute is replete with provisions in detail, to ensure an equal and faithful assessment of all property subject to taxation.   It requires all real estate to be valued by assessors upon actual view, and all personal estate upon actual view as far as practicable.   It requires the assessor, in the valuation of real estate, to consider the advantage and disadvantage of each parcel, by location, quality of soil, quantity and quality of timber, water, etc.   It also requires each assessor, upon the completion of his assessment roll, to annex to it his affidavit, stating in detail that he has performed his duty in several enumerated particulars, in the manner prescribed by the statute.   The affidavit must set forth, amongst other things, that the assessor believes the assessment roll to contain a complete list of all real property liable to assessment; the name of each person liable to personal tax; that he has valued each parcel of realty from actual view of it; that he has, as far as practicable, viewed each article of personal property assessed; and that each valuation is the full value

which could ordinarily be obtained for the property assessed, and which the assessor believes that the owner, if disposed to sell, would accept. The statute goes on to provide that the affidavit so made and annexed shall be returned, filed and preserved with the assessment roll; thus apparently making the affidavit essential to the assessment roll, and indeed a part of it.

It is, in this connection, worthy of notice, that ch. 166 of 1873 so varies the oath of the assessor as to declare, alike of personal and real property, that he has assessed them upon actual view, as far as practicable, only. The assessment passed upon in *Hersey v. Supervisors*, 37 Wis., 75, was made under the act of 1873.

The statute is a just and wise enactment to secure the integrity of assessments, and so to fulfill the constitutional rule; quite adequate to those ends, when the official integrity of assessors reaches the standard of the statute under which they hold their offices. The policy and justice of the provisions recited are obvious; and it would be idle to enlarge upon their necessity to such just and equal rule of assessment as will satisfy the uniform rule of taxation. The oath required of assessors, that they have made the assessment in strict compliance with the statute, is manifestly intended to secure the fundamental rule of taxation against indolence, carelessness, evasion and willfulness, as well as against partiality and fraud, of those officers. The affidavit is the evidence, and the only evidence, accompanying the assessment, that values have been arrived at justly and properly, in compliance with the statute, and to fulfill the rule of the constitution. And the affidavit therefore appears to be made by the statute of the substance, and not of the form, of the assessment roll.

There appears to be, indeed, no other check upon the conscience of the assessor. Few other ministerial officers have opportunity to disregard a great constitutional principle, or to violate grave private rights, with so much impunity. And

the statute therefore puts this check upon him, bringing his official duty directly to the test of his personal truth and integrity. An assessor who has faithfully performed his duty, as the statute gives it to him to perform, cannot hesitate to make the affidavit. An assessor who hesitates to make the affidavit, hesitates because he has not performed his duty; because he has not followed the process given by the statute, to secure the fair and uniform rule of assessment essential to a just and constitutional tax. In other words, an assessor who fails to make the affidavit impeaches the integrity of his own assessment.

The assessment rolls in question here, in both of these towns, are impeached upon their face by want of the statutory affidavit. There is no pretense that the assessor of the town of Weston ever made the affidavit. He himself testifies that he would not and did not make affidavit that he had valued each parcel of real estate from actual view, because it would not have been true. In the town of Lynn, a paper in the form of the assessor's statutory affidavit was at some time annexed to the assessment roll; at what time, may, under the peculiar evidence of the assessor and the clerk who signed the *jurat*, be considered doubtful. It was at some time signed by the assessor; it is difficult to say when. He states that he swore to it before the clerk when he signed it, but that he does not know when he signed it. The clerk testifies that the assessor made oath to the affidavit before him, but does not state at what time; intending probably to imply that the oath was taken when the assessment roll was returned. He positively states, however, that he himself signed the *jurat* to the affidavit several years after the levy and collection of the tax. Taken together, this is evidence of a very suspicious character; the more so, that the assessor's testimony in the cause shows that the affidavit, if made, would have been untrue. It may well be doubted whether the affidavit was ever made. It appears plainly enough that perjury could not be

well assigned on the affidavit, upon the evidence before us. Be that as it may, certain it is that, when the assessment roll was returned, when the tax was levied, and when the tax sale took place, the assessment roll had no affidavit annexed to it, bore no evidence that the assessor's affidavit had ever been made to verify it. It rather bore evidence, perhaps, in the unsigned *jurat*, that this assessor, like the other, dare not make the affidavit.

It is apparent that the failure of an assessor to annex his affidavit and return it with the assessment roll, is in disregard of a material provision of the statute, and defeats a material safeguard provided for the integrity of the assessment. When the affidavit is omitted in fraud of the statute, because the assessment was not made in compliance with the statute, as is the case here beyond reasonable doubt, there could be little difficulty in holding the assessment void for the want of it. For the statute does not authorize an unverified return, and the assessment roll is *prima facie* positively valid or void, when returned. And the verification of the affidavit connot be supplied by evidence *aliunde*. The assessment may be impeached by evidence *aliunde*, against the affidavit, when annexed. *Hersey v. Supervisors*, 37 Wis., 75. But the affidavit cannot be supplied. *Iverslie v. Spaulding*, 32 Wis., 394. We were at first disposed to express a doubt, in this case, whether, when the affidavit is omitted by accident, and evidence is given, to supply its place in support of the assessment, that it was made in good faith, in the manner which the affidavit should have verified, the assessment might not be upheld. But the statute authorizes no assessment roll without the affidavit, sanctions none. And it is dangerous to relax statutory rules in a matter so vital, going to the very integrity of the assessment and its compliance with the constitution. The door, once opened to cases of mere mistake, might well admit cases of fraud wearing the disguise of mistake; assuming to the courts the power of verifying assessments, which the assessors did not

verify for themselves. And, after very mature consideration, we feel bound to stand upon the letter, and what we believe to be the spirit, of the statute itself; and to apply the rule of *Iverslie v. Spaulding, supra.* See also *Jarvis v. Silliman,* 21 Wis., 599; *Matteson v. Rosendale,* 37 id., 254; and *Cotzhausen v. Kaehler* [*ante,* p. 332]. An assessment, not verified by the statutory affidavit of the assessor, cannot be otherwise verified, is not within the statute, and is valid for no purpose.

We may remark that, had we not come to this conclusion, we should have found no difficulty in holding void the assessments in question here, under the rule of *Hersey v. Supervisors,* 37 Wis., 75. The whole process of the assessors is clearly shown by their own testimony to have been a fraud upon the statute.

The learned counsel of the respondent contended that, in the towns in question, a compliance with the statute is impossible; and there is evidence in the case supporting his argument. But if the statute prescribes an impossible duty, courts cannot hold the duty performed, because it is impossible. We cannot hold an assessment valid, because it was impossible to make a legal assessment. The statute is peremptory, taking the case out of all rule of what is called reasonable construction. We cannot interpolate exceptions in it. Such an argument, which can have no force with courts, ought to have great weight with the legislature. It was probably in view of some such difficulty, that the affidavit was changed by the statute of 1873. But we surely have no power to antedate that provision.

And we have no choice but to hold that no legal tax was levied on the lands of the appellants in these towns, in the year in question.

II. In such a case, the equitable jurisdiction of the circuit courts is too well established, by repeated adjudication of this court, to be in any doubt. *Dean v. Madison,* 9 Wis., 402; *Weeks v. Milwaukee,* 10 id., 242; *Soens v. Racine,* id., 271;

*Mills v. Gleason,* 11 id., 470; *Foster v. Kenosha,* 12 id., 616; *Rogers v. Milwaukee,* 13 id., 610; *Warden v. Supervisors,* 14 id., 618; *Jenkins v. Supervisors,* 15 id., 11; *Knowlton v. Supervisors,* id., 600; *Hersey v. Supervisors,* 16 id., 185; *Bond v. Kenosha,* 17 id., 284; *Myrick v. La Crosse,* id., 442; *Mills v. Johnson,* id., 598; *Smith v. Milwaukee,* 18 id., 63; *Mitchell v. Milwaukee,* id., 92; *Kneeland v. Milwaukee,* id., 411; *Kimball v. Ballard,* 19 id., 601; *Wells v. Burnham,* 20 id., 112; *Crane v. Janesville,* id., 305; *Pierce v. Schutt,* id., 423; *Howes v. Racine,* 21 id., 514; *Lefferts v. Supervisors,* id., 688; *May v. Holdridge,* 23 id., 93; *Hamilton v. Fond du Lac,* 25 id., 490; *Siegel v. Supervisors,* 26 id., 70; *Dean v. Charlton,* 27 id., 522; *Dean v. Borchsenius,* 30 id., 236; *Whittaker v. Janesville,* 33 id., 76; *Quinney v. Stockbridge,* id., 505; *Dayton v. Relf,* 34 id., 86; *Morgan v. Hammett,* id., 512; *Hersey v. Supervisors,* 37 id., 75; *Massing v. Ames,* id., 645; *Pier v. Fond du Lac,* 38 id., 470; *Johnson v. Milwaukee,* 40 id., 315; and many other cases.

These cases establish the jurisdiction of courts of equity to enjoin the issue of tax deeds, to become a cloud upon the title, which are about to issue upon tax sales, where, in the language of the court, the groundwork for a valid tax is wanting.

The learned counsel for the respondent did not seriously question the general jurisdiction. He denied it only, as we understood him, as applicable to some technical objections urged in this case, which we have not found it necessary to notice.

The learned counsel also pressed upon us the rule that he who seeks equity, should do equity; and that the appellants should pay their fair taxes, before they could have relief against the tax sale. And he insisted that 'the appellants could not have relief without showing injustice done to them by the tax for which the deed was about to issue. We should not of course question either of these positions, in a case in which they could properly arise.

The difficulty of applying either rule in the present case is obvious, and has been already indicated. The trouble is that there is no tax; therefore no apportionment of the appellants' share of a tax. It is thus impossible for the appellants or for the court to say what would be their proportion of a valid tax. And it is surely sufficient injury, and sufficiently inequitable to support this suit, that a tax deed of the appellants' land will issue, unless they will pay a sum as a tax, for which no tax has been assessed. An illegal tax is none the less illegal because it may happen to be the same or even less than a legal tax might have been. When, as in this case, the whole assessment is a fraud upon the law and an evasion of the constitution, every exaction of a tax purporting to be levied upon it, is a wrong; an unlawful exaction of money, not legally or equitably payable, under false color of a legal proceeding.

This appeal and several kindred appeals submitted with it, were argued by the counsel on both sides with learning and ability which greatly aided us in considering them. We regret to add that all of the cases in them were printed and presented in entire disregard of the rule; so as to be rather a hindrance than a help in the examination of the facts. For this reason, no allowance must be taxed for any of the printed cases in this and the kindred appeals.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below with directions to render judgment according to the prayer of the complaint.