Hart vs. Smith.

RYAN, C. J., and LYON, J., took no part.

HART VS. SMITH.

TAX SALES AND DEEDS: EQUITY: EVIDENCE. *(1, 2) Conditions of equitable relief against tax sale, under sec. 29, ch. 141, R. S.  (3) When plaintiff must pay costs in such a suit.  (4) What will avoid tax sale.  (5) Posting of notice; "public places."  (6) Affidavit of publication in newspaper.  (7) When newspaper regarded as "printed in the county." (8) Tax deed issued* pendente lite; *its effect as evidence.  (9)* NEW TRIAL, *on reversal.*

1. Section 29, ch. 141, R. S. of 1858, does not entitle one who brings the equitable action there provided for, to any relief inconsistent with the established principle that he who seeks equity must do equity.

2. In an action to have a tax sale of land adjudged void, a certificate thereof canceled, and the purchaser restrained from taking a tax deed, where irregularities are shown which would avoid such a deed, but no defects going to the groundwork of the tax, the relief asked should be granted only upon condition that plaintiff pay the taxes fairly and justly assessed against the land.

3. In such a case, if plaintiff has not tendered defendant the amount of the tax, either before suit or by his complaint, and *no part* thereof has been shown to be inequitable, the relief should not only be conditioned upon his paying that amount, with interest and all charges accruing antecedent to the alleged irregularities, but should be *without costs* against the defendant; and, in the absence of any special reason to the contrary, plaintiff should be required to pay defendant's costs. An award of costs to the plaintiff in such a case would be an abuse of discretion. *Arnold v. Supervisors*, 43 Wis., 627, distinguished.

4. A city charter required the comptroller to attach to the tax roll his certificate that it had been compared with the assessment roll, and that the whole of the latter had been copied into the former; but also provided that this direction should be deemed directory only, and that no error in the proceedings not affecting the substantial justice of the tax, should in any way affect its validity. *Held*, that a mere omission of the comptroller to annex such certificate to the tax roll, without allegation or proof that the whole assessment roll was not in fact copied into the tax roll, would not vitiate the tax or avoid the proceedings for its collection.

5. Affidavits of the posting of notices of a tax sale state that one was posted "on the inner walls of the Peshtigo Co.'s store at Peshtigo village," one "on the inner walls of the postoffice in Marinette," and one "on the inner walls of the postoffice in the city of Oconto;" but do not state in terms that these were "public places." *Held*, that, in the absence of proof to the contrary, it will be presumed that places of the character described are public places, and the affidavits are sufficient.

6. An affidavit of publication in a newspaper, which states that affiant is the publisher of the paper, and that the notice was published therein for a certain length of time, is presumptive evidence at least that affiant *knew* the fact of such publication.

7. Where one-half of each issue of a newspaper published in a certain county was printed elsewhere for the publisher, and the other half, including the notices of sales for delinquent taxes on lands in said county, together with other matters of local interest, was printed in the county: *Held*, that the paper was printed in said county, within the meaning of the statute regulating the publication of such notices. Tay. Stats., 427, § 133.

8. A tax deed taken out by defendant during the pendency of the action was *prima facie* evidence of the regularity of the proceedings on which it is based, and threw the burden of proving their irregularity upon the plaintiff.

9. On the statement of counsel in this court that none of the notices of sale were signed by the treasurer (though that fact does not appear from the record on appeal), the cause, on reversal of a judgment in favor of the plaintiff, is remanded for a *new trial;* that fact, if shown, being sufficient to avoid the tax sale.

APPEAL from the Circuit Court for *Oconto* County.

The following statement of the complaint is taken from the opinion of Mr. Justice TAYLOR as originally prepared:

"This is an action brought by the plaintiff, the owner of certain real estate in the city of Oconto, to set aside certain tax

Hart vs. Smith.

certificates, issued by the county of Oconto upon the sale thereof for unpaid taxes.

"The complaint does not charge that there was any illegality in the assessment of the real estate upon which the taxes were levied, nor in the apportionment of the taxes; but sets forth certain irregularities in the proceedings to collect the tax. which, it is claimed, rendered the proceedings and the sale void. It further alleges that the defendant has given the plaintiff notice that he intends to take a tax deed upon such certificates, unless the same are redeemed. It does not allege that any tender of the taxes justly due upon the plaintiff's land had been made previous to the commencement of the action; neither does it contain any offer to pay the amount of such taxes. The relief demanded is, that the sale of the lands be declared illegal and void; that the certificates issued on such sale be declared void, and canceled; and that the defendant, the owner and holder of the certificates, be enjoined from taking any steps to procure any deeds upon such certificates."

The answer was a general denial. One of the questions litigated at the trial was, whether the newspaper in which the notice of the tax sale was published, was printed in Oconto county. (Tay. Stats., 427, § 133.) The only testimony on this point was that of J. W. Hall, the publisher of the paper, who said: "That paper was then published in Oconto county. One-half of it was printed in Milwaukee, and the other half in the city of Oconto. It is the general custom in this state for such small country papers to have the inside printed in Milwaukee. The tax list was set up and stereotyped in Madison; and I printed it in Oconto from the stereotyped plates, on the unprinted half of the sheet I got from Milwaukee. About half the paper is devoted to general news and literature, and is printed in Milwaukee; the other half to home matters, and is printed in Oconto. The whole is published in Oconto."

The other facts established at the trial will sufficiently appear from the opinion.

The court found that the facts alleged in the complaint were true, and rendered judgment granting plaintiff the relief demanded, on condition that, within twenty days after the entry of such judgment, he pay defendant the amount of the taxes for which the sale was made, with seven per cent. interest from the date of the sale to such payment, less the costs of this action. From this judgment the defendant appealed.

For the appellant, a brief was filed by *Tracy & Bailey*, and the cause was argued orally by *J. J. Tracy*. They contended for the principles asserted in the opinion herein, and cited the Wisconsin cases.

*W. H. Webster*, for the respondent, contended, 1. That whether the action be considered as brought under sec. 29, ch. 141, R. S. 1858, or independently of that statute, equity will interfere in behalf of the owner of real estate, in possession, to remove a cloud from his title *(Dean v. Madison*, 9 Wis., 402; *Knox v. Cleveland*, 13 id., 245; *Jones v. Collins*, 16 id., 594; *Dean v. Gleason*, id., 19); and that, by a strict construction of the statute, defendant might have been required to release his claim unconditionally, on proof that the tax sale was invalid, though in this case the judgment imposed just conditions. 2. That the sale was invalid for irregularities in the proceedings: (1) For want of any certificate of the comptroller of the city of Oconto showing that the assessment roll was compared with and copied into the tax list. Charter of Oconto, P. & L. Laws of 1869, ch. 449, sub-ch. VIII, sec. 13. This provision was mandatory, and no tax warrant could give the treasurer power to collect the taxes mentioned in the list, in the absence of such a certificate. *French v. Edwards*, 13 Wall., 506, 511; Cooley on Taxation, 184, 212–14. (2) For want of due proof of publication of the notice of sale in a newspaper as required by the statute. If the affidavit of publication is made by any other person than the *printer*, it must show affirmatively that the fact of publication was known to the affiant. Here the affidavit was made by the

publisher, not by the printer, and does not state that affiant knew the fact. No presumption will be indulged to supply this omission (Blackw. T. T., 246; *Farrar v. Eastman*, 10 Me., 191; *Porter v. Whitney*, 1 id., 306); and parol evidence is inadmissible to cure the defect. *Iverslie v. Spaulding*, 32 Wis., 394. The statute also requires that the notice shall be published in a newspaper "printed in the county," if there be one so printed, etc. (3) For failure to post notices of sale as required by law. The affidavit of the county treasurer states that he posted the notice " in a conspicuous place on the walls of *his* office;" but this does not necessarily mean the office which he occupied as county treasurer. The other affidavits state where the notices were posted, but not that they were public places; and there is no presumption that they were so. *Iverslie v. Spaulding*, 32 Wis., 394; *Jarvis v. Silliman*, 21 id., 600. As to the effect of neglect of the officer in this particular, see Blackw. T. T., 213; Cooley on Taxation, 339. (4) For want of the treasurer's signature to the notices. 3. That previous payment of the tax, or offer to pay it, was not essential to plaintiff's right to maintain the action, but went only to the question of costs, and the matter of costs in such cases rests in the discretion of the court *(Pierce v. Schutt*, 20 Wis., 423); and that the court might properly allow plaintiff costs in this case, especially if considered as one arising under sec. 29, ch. 141, R. S. of 1858.

TAYLOR, J. It is not claimed that the allegations in the complaint bring this case within the case of *Marsh et al. v. The Supervisors of Clark Co.*, 42 Wis., 502. There is no allegation that the assessment was unfair or unequal; nor is there any allegation of an omission to do any act which the law requires to be done, and which omission would tend to impair the general equality and uniformity of the assessment; nor is there any allegation showing that " the groundwork of a valid tax is wanting." In fact, the allegations in this com-

plaint admit that there was a valid assessment, and a valid tax equally apportioned upon the property of the plaintiff. We do not understand that the decisions of this court in the cases of *Philleo v. Hiles*, 42 Wis., 527, *Marsh v. Supervisors*, *supra*, and *Hersey v. The Board of Supervisors of Barron Co.*, 37 Wis., 75, were intended to, or have, changed the rule which was established by this court as early as the case of *Mills v. Gleason*, 11 Wis., 470, that a court of equity will not interfere to declare a tax invalid, and restrain its collection, unless the objections to the proceedings are such as go to the very ground-work of the tax, and necessarily affect materially its principle, and show that it must necessarily be unjust and unequal. This rule has been adhered to and reiterated in the following cases: *Warden v. Supervisors*, 14 Wis., 618; *Kellogg v. City of Oshkosh*, id., 623; *Bond v. Kenosha*, 17 id., 284; *Miltimore v. Supervisors*, 15 id., 9; *Mitchell v. Milwaukee*, 18 id., 92; *Dean v. Gleason*, 16 id., 1; *Mills v. Johnson*, 17 id., 598; *Myrick v. La Crosse*, id., 442; *Van Cott v. Supervisors*, 18 id., 247; *Hersey v. Supervisors*, 16 id., 185; *Crane v. Janesville*, 20 id., 305; *Ballard v. City of Appleton*, 26 id., 67.

This rule has been so far qualified by this court, that where it is made to appear that the tax proceedings are void at law, though not inequitable and unjust, and are, notwithstanding, an apparent lien, or cast a cloud upon the plaintiff's real estate, the court may entertain jurisdiction of the case for the purpose of removing the lien or cloud, provided the plaintiff has paid or offered to pay the amount of the tax justly and legally assessed against such real estate; and though no tender or offer to pay has been made before the commencement of the action, the relief may be granted conditionally upon the payment of such tax.   *Pierce v. Schutt*, 20 Wis., 423, and the cases above cited.

Nor do we understand that the rule, long established in courts of equity, that he who seeks equity must do equity, is qualified or abrogated in favor of a party who seeks to remove

Hart vs. Smith.

a cloud upon his title to real estate by reason of illegal pro-
ceedings taken to enforce a valid tax assessed thereon, and that
such party may demand as a right from a court of equity, that
such cloud shall be removed, without his doing what justice
and equity demand, that is, pay the tax. None of the cases
in this court recognize any such right on the part of a plaintiff;
and we think no such right exists. It would be a gross im-
peachment of the power of a court of equity, to deny it the
right to demand of its suitors good faith and common honesty
before it shall be compelled to grant them any relief. The policy
of this state, so far as legislative action can indicate it, has al-
ways been to enforce the payment of taxes in all cases when
they are equal and fair, and to deny to the owners of the tax-
able property of the state relief against tax proceedings with-
out first making payment of their just proportion of the taxes.
This policy is shown by making tax deeds evidence of title
without further proof of the proceedings, by the enactment of
short limitations in favor of parties holding under tax deeds,
and notably by the statutes which require a party recovering
in ejectment against a defendant claiming under a tax deed, to
first pay the taxes and interest, for the nonpayment of which
the lands were sold and the tax deed issued, before he can ob-
tain possession of the property recovered, and that part of ch.
22, Laws of 1859 (authorizing the holder of a tax deed to bring
an action against the original owner to bar his right), which
requires such owner, except in certain specified cases, to make
a deposit of the amount of taxes, interest, penalty and costs,
for the nonpayment of which the tax deed was issued, before
being allowed to contest the tax claimant's right to the lands
sold. Many other statutes might be cited to show this to be
the fixed policy of the legislative department of the state. The
cases above cited show that this policy has been fully carried
out thus far by the decisions of this court. That this policy
is just, and subserves the best interest of the state and the in-
dividual citizen, there can hardly be a doubt.

Hart vs. Smith.

In clear hostility, as we think, to this legislative policy and the established rule of this court, we are now asked by the respondent in this action to hold, in this action brought to remove an apparent lien created by tax proceedings, and the cloud which such proceedings cast upon his title, that he is entitled to the relief demanded, by simply showing that there is such an irregularity in the proceedings as would avoid a tax deed which might be issued in consummation of such proceedings, irrespective of the question of the fairness and justice of the tax, and without paying or offering to pay the taxes fairly assessed and equally apportioned to his real estate. This right, it is claimed, is given to the plaintiff in possession by sec. 29, ch. 141, Revised Statutes of 1858. We do not think this section can be construed to confer upon the plaintiff any such right. Standing alone and unaffected by other statutes relative to the same subject, it is apparent that the object of this section was to extend and enlarge the powers of a court of equity in giving relief to a party in possession of real estate, against persons setting up claims thereto, and give him the right to compel the person making such claim either to establish his right, or, on failure to do so, to release to the plaintiff all claim, and thereby bar himself forever after from asserting it. This section enlarges the power of the court to grant relief in cases of claim to real estate, which, by the well settled rules of a court of equity, do not constitute a cloud upon the title. It was not intended to limit the equitable powers of the court, and take away its power to require its suitors to do equity before demanding relief at its hands. *Maxon v. Ayers*, 28 Wis., 612; *Clark v. Drake*, 3 Pinney, 228. In this last case the court says: "We do not think that this section of the statute was intended to give courts of equity the power to disregard the well settled rules of law governing their proceedings for the purpose of determining questions of this nature. It was intended to give a person in possession of land the power to institute a suit in a court of equity, in a case proper for the

consideration of such a court, against any person setting up a claim to the land, to settle the question of title, although no attempt should be made to disturb the complainant in his possession." This language was cited and approved in the case of *Maxon v. Ayers, supra.* There was no necessity for enacting this section to enable a court of equity to entertain an action upon the complaint of the possessor to remove an apparent lien upon his real estate, or an apparent cloud upon his title. Courts of equity had, for many years previous to the enactment of that section, entertained such actions in favor of the party in possession, as well as in favor of a party not in possession but having the legal title. *Pier v. City of Fond du Lac,* 38 Wis., 470; Story's Eq. Jur., § 700, note 2. It was enacted to amplify those powers, as is held in the case of *Maxon v. Ayers, supra.* Proceedings under this section are in their nature equitable proceedings, and must therefore be governed by well established rules of equity. The section, as originally enacted, was sec. 34, ch. 84, R. S. 1849, entitled, "Of courts of chancery," clearly showing that the proceedings under it are to be treated as proceedings in equity. Its location in ch. 141 of the Revised Statutes of 1858 is no indication that it was intended to change the nature of the proceedings under the section, except so far as was necessary to conform them to the new code of procedure.

But this section, construed in the light of other legislation upon the subject of taxes and tax proceedings, necessarily requires that it should be so construed as to conform to such other legislation. It has been well said by a learned writer, that "every single statute is made under the knowledge of all other laws with which it is meant to coëxist, and by which its action is to be modified and determined. In the legislative, as in the religious code, the text must not be taken without the context." In view of other legislation upon the subject of taxation, it would be absurd to say that, whilst a party to the strictly legal action of ejectment must pay all taxes fairly

and equitably assessed upon his land, before he can recover the possession thereof from one who claims to hold it by virtue of a tax deed, which is held to be void by reason of irregularities in the tax proceedings, a party to a purely equitable action shall be entitled to have his lands declared to be disburdened from such taxes without paying any part of them, because the tax proceedings are void for like irregularties, not affecting the fairness or justice of the tax. We have no doubt that a party proceeding to set aside tax proceedings under sec. 29, ch. 141, R. S. 1858, is subject to the same equitable requirement to do equity before demanding equity, as though proceeding under the general and well established powers of a court of equity to remove the cloud upon his title created by such proceedings. In either case, he is not entitled to relief except upon the condition of paying all taxes fairly and equitably assessed, and which are not inequitable, unequal or unjust because the groundwork for a valid tax is wanting in the alleged tax proceedings. We are also of the opinion that, in an action like the one at bar, when the plaintiff has not tendered the taxes fairly assessed upon his lands before the commencement of his action, and does not in his complaint offer to pay them, and judgment is entered in his favor upon the ground that the tax proceedings are void for mere irregularities in the proceedings, which do not go to the groundwork of a valid tax and necessarily render the taxes unequal and unjust, such judgment should not only be conditioned upon the payment of the just taxes assessed, with interest thereon, and all charges accruing antecedent to the alleged irregularities, but should also be without costs to the plaintiff, and, except where there is some special reason therefor, the plaintiff should also be required to pay costs to the defendant. Under the evidence in this case, it was inequitable to charge the defendant with the plaintiff's costs of the action, and the judgment should be reversed as to the costs recovered by the plaintiff, even though the plaintiff had shown that the tax proceedings were void by

reason of the irregularities alleged by the plaintiff to exist therein.

If it be established as a rule governing actions of this kind, that the plaintiff is entitled to recover his costs when no part of the taxes sought to be declared illegal are inequitable or unjust, by simply showing an irregularity in the tax proceedings which might avoid a tax deed when used to enforce a claim of title under it, without either a tender of the tax before suit brought, or in his complaint, so that the holder of the tax certificate or deed can determine whether he will take it or contest his right, very few men will have the improvidence to become purchasers at tax sales. It will be a dangerous business to hold tax certificates or tax deeds, though involving only a few cents, or at most a few dollars, if the holder may be subjected to the penalty of paying a large bill of costs to an obstinate nontaxpayer, who may choose to commence an action against him without giving him the option of receiving without litigation what is equitably and justly due him.

It is true, as a general rule, that the question of costs is in the discretion of the court; but such discretion is a reasonable discretion, to be exercised reasonably. We think it is an abuse of such discretion to award a large bill of costs to a plaintiff who has come into court without offering to do, and in fact refusing to do, what justice requires he should do, and what the court demands of him as a condition to affording him any relief, against a defendant who has never had the option of determining whether he would receive what was so justly due him, or whether he would litigate.

The case of *Pierce v. Schutt*, 20 Wis., 423, clearly indicates that in such an action, where none of the taxes are declared inequitable, and therefore not payable, the plaintiff should not recover costs, but should pay such costs to the defendant as the court in its discretion might deem just. The language is: "The matter of costs in these cases rests very much in the discretion of the court, *and it could, as one condition of the*

*relief granted, require the plaintiff to pay such costs as might seem equitable under all the circumstances."* In the case of *Arnold v. Supervisors of Juneau County*, 43 Wis., 627, the plaintiff was allowed to recover costs; but it was put upon the ground that he had succeeded in avoiding a large part of the taxes upon grounds which relieved him from the duty of paying the same as a condition of relief. I think no case can be found where this court has affirmed a judgment for costs in favor of the plaintiff in an action like the one at bar, unless he had either made a tender of the taxes justly due before suit brought, or made an offer to pay them in the complaint, or unless he succeeded on the trial in avoiding some portion of the taxes claimed to have been assessed upon his property, for reasons which entirely relieved him of *any equitable obliga*tion to pay them. The supreme court of Michigan has uniformly held that, in an action like the one at bar, the plaintiff's complaint must be dismissed unless it is alleged therein that he had made a tender of the taxes equitably due before suit commenced. *Palmer v. The Township of Napoleon*, 16 Mich., 176; *Merrill v. Humphrey*, 24 id., 170; *Pillsbury v. Humphrey*, 26 id., 245. This court has established a more liberal rule; but it has not gone so far as to offer a reward to suitors for neglecting or refusing to do what honesty and good faith imperatively demand they should do, before calling to their aid the powers of a court of equity.

Thus far we have considered this case upon the hypothesis that the plaintiff in the court below had shown such irregularities in the tax proceedings as rendered them and the tax deed issued thereon void, and as indicating what judgment should be entered in the court below, if, upon a new trial, such irregularities shall be shown.

Upon the record as returned in this case, we are unable to say that the tax proceedings are void for any irregularities shown by the proofs. The only reasons urged in this court by

the respondent for declaring the tax proceedings irregular and void, are these:

*First*, that the comptroller of the city of Oconto did not make out and attach to the tax roll his certificate that the roll had been compared by him with the assessment roll, and that said assessment roll, and the whole thereof, had been copied into such tax list. Sec. 13, ch. 8 of city charter, which is ch. 449, P. & L. Laws of 1869. Sec. 18 of ch. 8 of said city charter also provides, in substance, that all the directions given in said ch. 8 shall be deemed directory only, and no error or informality in the proceedings of any officers intrusted with the same, not affecting the substantial justice of the tax itself, shall vitiate or in any way affect the validity of the tax assessed. We are of the opinion that, under these provisions, the omission of the comptroller to annex his certificate to the tax roll did not affect the substantial justice of the tax assessed. There is no allegation in the complaint that it did, nor is there any proof given to show that the whole assessment roll was not in fact copied into the tax roll. This omission did not, therefore, vitiate the tax, or render the subsequent proceedings for the collection thereof void.

*Secondly*, it is insisted that the proofs of publication of the notice of sale for the nonpayment of the taxes, required by law to be made by the treasurer of the county, do not show, 1st, that such notice was posted up in four public places in the county, for four weeks previous to the tax sale; 2d, that such notice was published for four weeks in a newspaper printed in the county.

The objections to the proof of posting the notices of sale are, that the affidavits of the posting on file do not state that the places where the same were posted were public places. The affidavits show that the notices were posted as follows: one " on the inner walls of the Peshtigo Company's store, at Peshtigo village, in Oconto county; " one " on the inner walls of

the postoffice at Marinette, Wis.;" and one "on the inner walls of the postoffice in the city of Oconto, in said county." It is claimed by the respondent that the court cannot take judicial notice that the places mentioned as the places where such notices were posted, are public places, and therefore there is no proof that the treasurer complied with the statute in this respect.

It has been held, at least by implication, in several cases in this court, and also by the supreme courts of Michigan and Maryland, that an affidavit of the posting of the notice of the tax sale or other proceeding, under a statute which requires the same to be posted for a certain length of time in one or more public places in a town or county, which simply states that such notice was posted in the required number of public places in such town or county, for the time fixed by the statute, is sufficient evidence of compliance with the law, without mentioning the particular places where the same were posted. *Jarvis v. Silliman*, 21 Wis., 607; *Iverslie v. Spaulding*, 32 id., 394; *People v. Highway Commissioners*, 14 Mich., 528; *County Commissioners v. Clarke*, 36 Md., 206. It is probable that this is the form of proof made by most of the county treasurers, on tax sales made in this state; and it is undoubtedly presumptive evidence of compliance with the requirements of the statute. It has not been held, so far as I have been able to ascertain, by this court, that an affidavit of the posting of a tax notice, which stated the particular places where the notices were posted, was not sufficient proof of such posting, if it appeared from the affidavit that the places mentioned therein were in fact public places. We are of the opinion that an affidavit in the latter form is more satisfactory than one in the form first mentioned. By the former affidavit, we have only the opinion of the witness that the places of posting were public places; and, however false the affidavit might be, there would be great difficulty in proving its falsity, for the reason that, no place of posting being stated, it would

be almost impossible to disprove the fact of its being posted at all, or the fact that the place was not a public one. In the form of the affidavit first mentioned, the witness swears simply to a conclusion of law, without giving any fact upon which such conclusion is based; whilst an affidavit of posting of the kind made in this case gives the facts, and leaves the court to draw its conclusions. From such an examination as I have been able to give to this subject, I find that it is the practice in New Hampshire and Massachusetts, in making proof of the posting of notices required by law to be posted in public places, to set forth in the affidavit the particular places where the same are posted, without stating that such places are public places; and this form of affidavit is approved by the courts of those states. In the case of *Nelson v. Pierce*, 6 N. H., 194, which was a tax sale, and the law required that the notice should be posted in a public place, the proof was that it was posted up in a bar-room, and no question was made of its sufficiency to show that it was posted in a public place. In *Tidd v. Smith*, 3 N. H., 178, which was also a tax case, and the proof of posting showed that the notice was posted in a shoemaker's shop, the court held, as a matter of law, that it was not posted in a public place. In this case the court say: " It is very clear that the question whether a particular place is to be considered a public place, within the meaning of the statute, is a question partly of fact and partly of law. The nature and situation of the place, and the uses to which it is applied, are matters of fact to be settled by a jury. But when these are settled, whether the place is to be considered a public place, within the intent of the statute, is purely a question of law." The court further say: " The general understanding of the community, on a question of this nature, is entitled to much respect; and it is believed this understanding has viewed as public places, houses of public worship, inns, and perhaps, in some places, shops where goods are retailed." In the case of *Wells v. Burbank*, 17 N. H., 393, the proof offered was a

certificate of the sheriff that he had posted the notice in the bar-room of the hotel. The certificate was held not to be competent proof, because, though sworn to, the law did not make such oath evidence of the fact. No question was made as to its sufficiency in showing that it was posted in a public place. Upon this point the court say: "It is not necessary at this time to settle what may be a public place within the meaning of the statute. Practically, it is generally supposed to mean a tavern, store, or other place where people are in the habit of resorting for the transaction of business. Perhaps a meeting house, open from week to week for public worship, may come within the description." In the case of *Farnum v. Buffum,* 4 Cush., 260, which was also a tax sale, the affidavit of the posting of the notices showed that one was posted up at the postoffice, and one at a store. It seems to have been taken for granted that this proof showed that the notices were posted in public places. No question was made on the insufficiency of the proof on that point. Whilst we do not decide that an affidavit of posting which simply states that the proper notices were posted in four public places in the county, one of which was in the treasurer's office, is not sufficient evidence of a compliance with the requirements of the law in that respect, we are inclined to hold that if the affidavit shows on its face that the places where the same were posted were in fact public places, it is sufficient, without stating therein that such places are public places. Such an addition to the affidavit cannot add anything to its strength; it is the mere opinion of the witness, and cannot conclude the party whose property is sold, from showing that the places were not in fact public places.

The proof of posting, in this case, showing that the notices were posted at the postoffice in the city of Oconto, the postoffice in the village of Marinette, and at the Peshtigo Company's store, all in the county of Oconto, is at least presumptive evidence that they were posted in public places in the county. We think that in this state the court, in the absence of any

Hart vs. Smith.

proof to the contrary, must presume that postoffices in cities and villages are public places, and that a lumber company's store is also a public place.

The objection to the proof of publication of the notice in a newspaper published in the county of Oconto, we think, is without any foundation in fact. The affidavit of Mr. Hall shows that he is the publisher of the paper; and he swears that the notice was published therein for the requisite time. The fact that he was the publisher, and swears that it was published in his paper, is at least presumptive evidence that he knew the fact of its publication. His evidence given on the trial shows that the paper was printed in the county, within the meaning of the statute on that subject.

The objection made on the argument, that the notice of sale, as published and posted, was not signed by the treasurer, either in his official capacity or otherwise, does not sufficiently appear from the record to justify us in finding that it was not so signed.

A tax deed was issued upon the certificates sought to be set aside, before the trial, and was offered in evidence by the defendant. This deed is presumptive evidence that all the requirements of the law had been complied with; and the burden of proof is cast upon the plaintiff. He must, therefore, show clearly, from the evidence offered, that irregularities have occurred in the proceedings, which avoid the sale and deed, before he can demand the judgment of the court that they shall be declared void. We do not think this record shows any such irregularities.

The judgment of the circuit court is reversed. As it was alleged by the attorney for the respondent, that none of the notices of the tax sale, as published and posted, appeared to have been signed by the treasurer, and, if such defect should be made to appear, it would avoid the sale, a new trial is ordered.

*By the Court.* — Judgment reversed, and new trial ordered.

RYAN, C. J., and LYON, J., took no part.