TOWN OF WILSON, Appellant, vs. CITY OF SHEBOYGAN, Respondent.

*December 9, 1938—March 7, 1939.*

For the appellant there were briefs by *Eberlein & McCarthy* of Shawano and *Patrick J. McCaffrey* of Milwaukee, and oral argument by *Mr. M. G. Eberlein* and *Mr. McCaffrey*.

*Edward C. Schmidt,* city attorney, and *George R. Currie* of Sheboygan, special counsel, for the respondent.

The following opinion was filed January 10, 1939:

FOWLER, J. The plaintiff seeks to have the annexation proceedings referred to in the preceding statement of facts declared void in order that it may continue to receive from the state the portion of the tax laid by the state upon the power plant of the Wisconsin Power & Light Company, which under sec. 76.28, Stats., is paid over to the governmental unit in which the plant is situated. The defendant seeks to sustain the proceedings in order that it may receive that portion of the tax.

The plaintiff is met at the outset by the contention of the defendant that it cannot contest the proceedings because it did not commence the action within the period limited by statute for attack thereon. The final proceeding in annexation of territory to a city is the passage of an ordinance of annexation by the city council. Sec. 62.07 (1) (b), Stats. Sec. 62.07 (3), Stats., provides that the validity of annexation proceedings cannot be attacked unless suit therefor be commenced before the ordinance of annexation becomes

operative, which is within ninety days from its passage. The instant suit was not commenced until long after that period had expired. A similar statute exists in respect to attacks upon proceedings for the laying out of roads by town boards. Sec. 80.17, Stats. The latest decisions upon the two types of proceedings under these statutes are not in accord. The case of *Roehrborn v. Ladysmith,* 175 Wis. 394, 396, 185 N. W. 170, rules that an ordinance to annex territory to a city adopted within thirty days after introduction thereof is *absolutely void,* although not questioned within the time prescribed by sec. 62.07 (3), Stats. It is conceded that the instant ordinance was adopted within the thirty-day period prescribed by that statute. This was in accord with *Herman v. Oconto,* 100 Wis. 391, 76 N. W. 364. It had been held in *Lutien v. Kewaunee,* 143 Wis. 242, 247, 126 N. W. 662, 127 N. W. 942, of a publication of an annexation ordinance after passage instead of before that:

"But ninety days after such ordinance is adopted the time for calling it in question expires whether publication [after passage] is defective or not, and even if no publication [after passage] has taken place."

This rule was held in the *Ladysmith Case, supra,* not to apply to a publication before passage, and that "a statute limiting the time within which the validity of the ordinance may be called in question cannot operate to give vitality to a proceeding which is void." The rule of the *Ladysmith Case* was applied in the later case. of *Behling v. Milwaukee,* 190 Wis. 643, 209 N. W. 762. The plaintiff town contends that the *Ladysmith Case* rules the instant case in its favor, and this is correct unless the later case of *State ex rel. Thompson v. Eggen,* 206 Wis. 651, 238 N. W. 404, 240 N. W. 839, overrules it.

The ruling in the *Eggen Case* was that the filing of a valid petition with a town board to lay out a road conferred on the town board jurisdiction to act, and departure from statutory

procedure thereafter did not operate to void an order laying out the road unless attacked within three months.

The defendant contends that the *Ladysmith Case* is overruled by the *Eggen Case,* wherein it is said (p. 658) :

"There may be some difficulty in distinguishing the question there [in the *Ladysmith Case*] involved from the one here considered. But insofar [if at all] as that case conflicts with the conclusion here reached it must be deemed overruled."

Counsel for plaintiff contend that the *Eggen Case* is not in point because no notice is prerequisite to the filing of a petition with the town board for laying out of a road, while notice of circulation of a petition for annexation is prerequisite to the filing of a petition with the city council for annexation of territory to a city. We perceive no difference in the two situations providing the petition filed in the annexation proceeding is *valid.* If the filing of a *valid* petition in the road proceedings validates the final act of the process unless the proceedings be questioned within ninety days, however much they may depart thereafter from statutory directions, we perceive no reason why failure to call in question annexation proceedings within the statutory period for attack does not cure departure from statutory directions in proceedings subsequent to the filing of a valid petition in the annexation proceedings. The basis of the ruling in the *Eggen Case* is that the filing of a *valid* petition gives the town board jurisdiction to err, and if the filing of a valid petition gives the town board jurisdiction to err in its subsequent proceedings in road proceedings, we see no reason why a valid petition in annexation proceedings does not give a city council jurisdiction to err in proceedings in annexation taken subsequent to the filing of the petition.

It is contended by plaintiff that the rule of the *Eggen Case* does not apply to this case because the statute on which it is based provides that action shall be commenced within ninety

days from the time the ordinance of annexation takes effect, and that in the instant case the taking effect of the ordinance was suspended by the filing of a petition for a referendum to the electorate of the city.

Sec. 62.07, Stats., is headed "Annexation and detachment of territory." Immediately after the heading follows: "(1) Annexation procedure" including pars. (a) and (b). Then follows: "(2) Detachment procedure" including three paragraphs (a), (b), and (c). Par. (c) reads as follows:

"(c) The council may, or if a petition signed by five per cent of the electors of the city demanding a referendum thereon be presented to the council within ninety days after the passage of the ordinance, the council shall cause the question to be submitted to the electors of the city at the next ensuing city election, and the ordinance shall not take effect nor be in force unless a majority of the electors voting thereon shall approve the same."

A petition signed by five per cent of the electors of the city was filed with the city council on August 2, 1936, the ninetieth day after the passage of the ordinance of annexation, and an ordinance for annexation does not take effect until ninety days after its passage. Sec. 62.07 (3), Stats. This petition was designated as filed under sec. 62.07 (c), (2) being omitted from the designation. But as appears from the above sub. (2), (c) applies only to detachment proceedings. There is no provision for a referendum in attachment proceedings. This petition was therefore ineffectual unless it can be sustained under the general referendum statute, sec. 10.43, headed "Direct legislation" as plaintiff contends it may be.

But sec. 10.43, Stats., provides that a petition signed by fifteen per cent of the electors of a city requesting that a proposed ordinance annexed be either adopted without alteration by the council or be referred without alteration to a vote

of the electors. Assuming the petition was signed by fifteen per cent of the electorate, this section has no application to an ordinance already passed. Thus the filing of the petition for a referendum was entirely ineffectual for want of any statutory authority for the filing of it or for holding any referendum in the situation involved.

But it is to be noted, even if there be no distinguishable difference between the situations involved in the *Eggen* and the *Ladysmith Cases, supra,* that the rule of the *Eggen Case* is limited to cases where the petition filed is *valid*. The filing of a valid petition gives jurisdiction to proceed but the filing of an invalid one does not. The plaintiff claims the petition filed with the council in the instant case was invalid.

Sec. 62.07 (1) (a), Stats., provides that notices of the circulation of a petition for annexation of territory to a city shall be posted in eight public places within the municipality in which the territory to be attached lies not less than thirty or more than forty-five days from the time of posting, and that if such posting is not done the petition is *invalid*. The notices in the instant case were posted on telephone poles within the public highway, and the plaintiff contends that one of the notices posted in the town of Wilson was not within a public highway, and that some of the other poles on which the notices in said town were posted, although within the public highway, were in such remote places and so inaccessible that they did not constitute public places.

As to the telephone pole claimed by plaintiff not to be in a public highway, the evidence as to its location is contradictory. The evidence on the point was given by the deputy sheriff who posted the notice. He first stated that the pole was not in the public highway, and afterwards stated that it was. He was right one time or the other. It was for the trial court to say which. The trial court expressly found that the pole was within a public highway. We cannot say

his conclusion was erroneous. As to whether a telephone pole in the highway is a public place must be determined from the circumstances of the particular case. That some of the poles on which notices were posted were public places would seem to be beyond question, but as all must have been such to render the petition filed with the city council valid we need consider only the ones most remote or inaccessible. For this purpose we will take two—one posted in the public road where a private road leads therefrom into and through the power company's inclosure up to its power plant and another within the highway where two roads intersect.

The extent of travel on the public road where the private road leading to the power plant leads off does not appear. The deputy sheriff who posted the notices states of this pole and others he used: "I posted notices [three times] before this one on the telephone pole near the utility plant. . . . I take the most public posts. I haven't gone on the theory that any telephone pole was a place to post and proper place. I mean by most public telephone pole, more activity, where the thoroughfare is more active. In other words, where there would be more travel on the highway." He also testified that the poles he used in the instant case were ones where he usually posted notices of foreclosure sales and the like. "Another pole was where a side road leads into State Highway No. 141. There was no building there. Nearest building is a farm home a quarter of a block away. The four corners are used as farm lands." The period was one of deep snow. Roads were plowed out. Drifts lay between the cleared roadway and the telephone poles. The plowed-out snow lay on the average eight or nine feet deep. At some of the poles on which the notices were posted the snow so lay between them and the cleared roadway. This was the situation when the posting was done on February 11th and 12th. How long it continued does not appear. The circulation of the petitions was found by the circuit court to have been on March 24th.

This court on at least three occasions has considered what constitutes a public place for the posting of notices required by law to be posted. In *Hart v. Smith,* 44 Wis. 213, 227, the matter is discussed at length, pages 225 to 229. The notice there involved was of the holding of a tax sale. It is said, quoting from *Tidd v. Smith,* 3 N. H. 178, that whether a place is a public place within the meaning of a statute respecting posting of notices "is a question partly of fact and partly of law. The nature and situation of the place, and the uses to which it is applied, are matters of fact to be settled by a jury. But when those are settled, whether the place is to be considered a public place, within the intent of the statute, is purely a question of law." A shoemaker's shop was held in the *Tidd Case, supra,* not to be a public place. It seems that in other New Hampshire cases cited in the *Hart Case* opinion, a barroom was held to be a public place for the purpose of posting notices. The *Hart* opinion quotes from the *Tidd Case* to the further effect that "houses of public worship, inns, and perhaps, in some places, shops where goods are retailed" are public places. The *Hart Case* held that the inside wall of a post office, and of a lumber company's store were public places within the meaning of the statute providing for posting notices of tax sales. *Myrick v. Kahle,* 120 Wis. 57, 97 N. W. 506, also involved the question of what is a public place for posting a tax sale notice. It was held that an affidavit of posting that stated that a notice was posted on six street corners, naming them, was insufficient, and that "a conspicuous place at a street corner" is not necessarily a public place within the meaning of the statute. It is said at page 62 of the opinion:

"Are the places described in their nature public places within the meaning of the law as defined in *Hart v. Smith,* 44 Wis. 213, and subsequent cases? What is a public place within the meaning of the statute as indicated in these decisions, resolves itself into a question partly of law and partly

of fact. We must therefore look to the places designated and described to answer it. The place of posting should be one accessible to persons as a public, and applied to such uses and purposes where the public resorts, and thereby make them open to public observation. The obvious intention of the statute being to give publicity of the time, place, and lands to be sold, and thereby induce persons to attend the sale. It seems clear that street corners are not necessarily 'public places' within the requirement of the law. It is a matter of common knowledge that conspicuous places at many street corners in cities are comparatively obscure and secret places, and to post a notice of tax sale in a conspicuous place at such corners would most likely fail to attract observation and meet the public view. These irregularities and omissions in the affidavit offered in evidence render the sale and tax deed issued thereon ineffectual and void."

The nearest thing to a definition of a public place within the meaning of the statute is found in the opinion in *Bouchier v. Hammer,* 140 Wis. 648, 651, 123 N. W. 132. It is there said:

"But the expression 'public place' is not occult. It is a part of the English language, and the words are common and ordinary in usage, and that, too, in their legal designation, namely, a place where the public resort, so that the exposure of such a document is likely to give notice. The publicity of the place involves in common statement quite as much, if not more, of the element of fact as it does of legal conclusion."

It may be conceded that a telephone pole in a public highway is not necessarily a public place within the declarations of this court. So far as has been called to our notice the only places ruled to be public have been the inside walls or front of buildings to which the public customarily resort. The front of hotels was held to be a public place in the *Bouchier Case, supra.* However these holdings do not imply that a telephone pole is not to be considered as a public place because it is not the front or inside wall of a building. A notice may as well be posted on a telephone pole as the front of

a building, if the pole is located at a place where the public gather or resort. So it might properly be held a public place if it be at a place where the public are likely to see it in passing. In 2 A. L. R. 1008, is a note citing cases to the point of what is a public place for posting notices. A fence near a barn on the public road was held to be a public place for this purpose in *Goss v. Cardell,* 53 Vt. 447; a barn in *Alger v. Curry,* 40 Vt. 437; a board nailed on and projecting into a roadside wall in a country district in *Seabury v. Howland,* 15 R. I. 446, 8 Atl. 341; a tree near a schoolhouse in *Lutgen v. Board of County Commrs.* 99 Minn. 499, 110 N. W. 1. Where notices to be posted in proceedings to form a drainage district were required to be posted in five of the most public places in the district, posting on trees and fences where they would be most likely to be seen was held to be sufficient, where there was no post office, store, shop, or schoolhouse in the district. *Walker v. Sundermeyer,* 271 Mo. 579, 197 S. W. 102.

In considering whether a pole or tree or the like by the roadside is a public place for the posting of legal notices we must consider that in rural sections, particularly in the northern part of the state, there may be no buildings or other places where people customarily resort or gather in considerable numbers within an entire town, and to hold that a pole or the like was not a proper place for posting notices would render compliance with the statutory provision for posting notices in attachment proceedings impossible. If the posting in such case be at places as likely to be seen as at any other places in the town it must be held sufficient, else there can be no attachment. The statute does not require that the posting be in the most public places, or imply that the posting may not be at places less public than others. Doubtless posting might be done at places so remote and unfrequented as not to be public places. But in the instant case we cannot say that either of the two poles referred to was at such a place. From all that

appears in evidence we consider that they must be held on the finding of the circuit court to be public places within the meaning of the statute, unless the presence of the snow drifts and piling up of snow in clearing the roads render them so inaccessible and the notices so unlikely to be observed as to preclude them from being so held. One of the notices posted was posted on February 21st. The sheriff who posted it testified that "the snow was very deep. It is a fact that I had to wade in very deep snow to go from the highway to this post, and I had trouble getting to it." While the presence of the amount of snow disclosed as existing on February 21st may have made placards posted less accessible than they would have been without it, the opportunity for observing them would hardly be lessened, unless where the snow was piled by clearing the road. But a pile of snow in front of the town hall would equally affect the visibility of a placard posted on the door thereof, and the town hall would ordinarily be as little resorted to as a telephone pole in the winter season. It would hardly be contended that the town hall ceased being a public place because of the snow. Snow is to be expected in the season for it. So if a telephone pole is a public place in the summer time it does not cease being one in the winter time, although deep snow and drifting may then occur. That is to be expected. We cannot say contrary to the finding of the circuit court that the evidence shows the poles were so inaccessible or unobservable to travelers on the road as to render them not public places. In this situation we cannot hold that the petition was illegal for want of proper posting of the notices of circulation.

The plaintiff contends that the petition for annexation was invalid because it showed on its face that the territory in the town of Wilson that it proposed to attach is not adjacent to the city of Sheboygan, and only territory adjacent may be attached. But all the tracts of land attached when there is more than one cannot be adjacent. All that is required

is that the territory as a whole be adjacent.   Sec. 66.025, Stats.   Taking the instant territory as a whole it was adjacent to the city.

It is also contended that the territory attached is such as is not suitable or adaptable to city use or needs and the petition is therefore illegal.   But the 39.726 acres of the Wisconsin Power & Light Company has a spur railroad track connecting it with the railroad tracks in the city, and this tract and the other property adjacent to the spur is suitable for industrial sites, for which the mayor of the city testified there is need for development of the city to the south.   Moreover, the greater part of the territory attached is suitable for residential purposes.

It is contended that the sole purpose of the annexation is to enable the city to secure the refund of the portion of the tax levied by the state and collected from the Wisconsin Power & Light Company as a public utility, and two cases, *Smith v. Sherry,* 50 Wis. 210, 6 N. W. 561, and *Langworthy v. City of Dubuque,* 13 Iowa, 86, are cited to the point that a city cannot annex territory for revenue purposes only.   This may be so as against the protest of the owners of the property attached.   But the owner of every tract here attached petitioned for annexation.   Annexation may be highly advantageous to them for it gives the right to claim that water and sewer service be furnished them by the city. It is not for the town to deprive the owners of the property of this benefit merely because annexation will deprive the town of the taxes refunded by the state on the Power & Light Company's plant and give them to the city of Sheboygan.   Moreover, this is matter not going to the invalidity of the petition and objection on that score is barred by not moving to vacate the annexation within the ninety-day period.

The plaintiff also claims that the petition is void because the property of the Wisconsin Power & Light Company is not on the local tax roll, and the statute provides only for

the attachment of property on such roll. This contention is based on the language of sec. 62.07 (1) (a), Stats., which provides that—

"A petition therefor [for annexation] shall be presented to the council (1) signed by a majority of the electors in such adjacent territory and by the owners of one third of the taxable property thereof according to the *last tax roll*, or (2) if no electors reside therein by the owners of one half of said taxable property [according to the *last tax roll*], or (3) by a majority of the electors and the owners of one half of the *real estate in assessed value*."

The claim is that the use of the words "last tax roll" and "real estate in assessed value" above italicized preclude annexation of the 39.726 acres of the Wisconsin Power & Light Company property because it is not on the local tax roll or assessed locally. But if not on the local tax roll, it is on the tax roll of the state tax commission on which utility property is entered. The tax roll of the tax commission and the assessment of the 39.726 acres is accessible to ascertain any information required to test the validity of the petition for annexation and validity is all we are here concerned with.

It is also contended that including in the petition a tract of 10.502 acres adjacent to the city used as a park, and which belonged to the city and was already within the city limits, invalidated the petition. We do not perceive any reason why it should be given such effect. Including it does not affect the limits of the city as fixed by the passage of the ordinance. To include what was already within the city limits was merely surplusage which may be disregarded.

Some other objections are made by the plaintiff. All not above discussed are considered as not timely because not taken within the ninety-day period, and therefore not open to review. Some above considered perhaps need not have been discussed for the same reason.

*By the Court.*—The judgment of the circuit court is affirmed.

A motion for a rehearing was denied, with $25 costs, on March 7, 1939.